No. 18-35592

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

DANIEL WALKER,

Plaintiff-Appellant,

v.

FRED MEYER, INC.,

Defendant-Appellee.

On Appeal from the United States District Court
For the District of Oregon,
Case No. 1:17-cv-1791-YY
The Honorable Michael H. Simon, United States District Judge.

---

OPENING BRIEF FOR
PLAINTIFF-APPELLANT DANIEL WALKER

---

Neal Weingart
(neal@neilweingartlaw.com)
JONES & SWARTZ PLLC
1001 SW Fifth Ave., Ste. 1415
Portland, Oregon 97204
Telephone: (503) 379-9933

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)
WOODROW & PELUSO, LLC
3900 East Mexico Avenue
Ste. 300
Denver, Colorado 80210

*Attorneys for Plaintiff-Appellant Daniel Walker*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................iv

STATEMENT OF PERTINENT STATUTORY PROVISIONS ............vii

INTRODUCTION.................................................................................1

JURISDICTIONAL STATEMENT ........................................................3

ISSUES PRESENTED FOR REVIEW ...................................................4

STATEMENT OF THE CASE ...............................................................4

SUMMARY OF THE ARGUMENT ........................................................9

STANDARD OF REVIEW...................................................................10

ARGUMENT .....................................................................................11

I.    THE DISTRICT COURT ERRED IN CONCLUDING THAT FRED MEYER'S CONSUMER REPORT DISCLOSURE DID NOT VIOLATE THE FCRA.................................................................11

    A.    The Plain Language Of The FCRA Requires Consumer Report Disclosures To Be Made In A Document That Consists Solely Of The Disclosure And Authorization.........12

    B.    The Lower Court Incorrectly Found That The Extra Information In Fred Meyer's FCRA Disclosure Was Allowed Under Caselaw And FTC Guidance.....................................15

    C.    Extraneous Information Included In Fred Meyer's Disclosure Form Confused Walker And Violated The FCRA. ...............21

    D.    Fred Meyer's Authorization Form Further Blurs The Distinction Between Consumer Reports And Investigative Reports And Distracts Employees From The Purpose Of The Documents...........................................................................28

II.   THE DISTRICT COURT ERRED IN CONCLUDING THAT FRED
      MEYER'S PRE-ADVERSE ACTION NOTICE DID NOT
      VIOLATE THE FCRA ................................................................... 31

      A.    Fred Meyer Diverts Discussions Regarding Consumer
            Reports To A Third Party, Thereby Frustrating The Purpose
            Of The FCRA's Pre-Adverse Action Notice Requirement. ... 32

      B.    When Information Is Correct, Discussion With A Third Party
            Cannot Achieve The Purpose Of The FCRA. ........................ 37

CONCLUSION .......................................................................................... 40

STATEMENT OF RELATED CASES ...................................................... 41

CERTIFICATE OF COMPLIANCE ......................................................... 41

PROOF OF SERVICE .............................................................................. 42

# TABLE OF AUTHORITIES

## CASES

*Case v. Hertz Corp.*, No. 15-CV-02707-BLF,
  2016 WL 1169197 (N.D. Cal. Feb. 26, 2016) .............. 18, 19, 22, 23

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ............................................... 15–16

*Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-cv-02588-JCS,
  2015 WL 5782352 (N.D. Cal. Oct. 5, 2015) .................................... 20

*Cunha v. Intellicheck, LLC*, 254 F. Supp. 3d 1124 (N.D. Cal. 2017)...... 18

*Dunford v. Am. DataBank, LLC*,
  64 F. Supp. 3d 1378 (N.D. Cal. 2014) ........................................... 18

*Enesco Corp. v. Price/Costco Inc.*,146 F.3d 1083 (9th Cir. 1998)........... 11

*Feist v. Petco Animal Supplies, Inc.*,
  218 F. Sup. 3d 1112 (S.D. Cal. 2016) .............................................. 19

*Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
  848 F. Supp. 2d 532 (E.D. Pa. 2012) .............................................. 34

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982) ..................... 13

*Lagos v. Leland Stanford Junior Univ.*, No. 5:15-cv-04524-PSG,
  2015 WL 7878129 (N.D. Cal. Dec. 4, 2015) ............................. 16, 19

*Magallon v. Robert Half Int'l, Inc.*,
  311 F.R.D. 625 (D. Or. 2015)................................................... 34, 36

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ................................. 10–11

*Meza v. Verizon Commc'ns, Inc.*, No. 1:16-CV-0739 AWI MJS,
  2016 WL 4721475 (E.D. Cal. Sept. 9, 2016) ................................... 19

*Mix v. Asurion Ins. Servs. Inc.*, No. CV-14-02357-PHX-GMS,
2016 WL 7229140 (D. Ariz. Dec. 14, 2016) .................................... 37

*Peikoff v. Paramount Pictures Corp.*, No. 15-cv-00068-VC,
2015 WL 13650922 (N.D. Cal. Mar. 26, 2015) .............................. 16

*Poinsignon v. Imperva, Inc.*, No. 17-cv-05653-EMC,
2018 WL 1709942 (N.D. Cal. Apr. 9, 2018) .................................. 19

*Syed v. M-I, LLC*, 853. F.3d 492 (9th Cir. 2017) ........................... *passim*

*Thomas v. FTS USA, LLC*,
193 F. Supp. 3d 623 (E.D. Va. 2016) ........................... 34, 35, 38, 39

*United States v. M.H. Pulaski Co.*, 243 U.S. 97 (1917) ......................... 13

*United States v. Mechasche*, 348 U.S. 528 (1955) .................................. 13

*Wilson v. Lynch*, 835 F.3d 1083 (9th Cir. 2016) .................................... 10

## STATUTES, RULES, AND OTHER SOURCES

Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.* .......................... *passim*

28 U.S.C. § 1291 ................................................................................. 3

28 U.S.C. § 1331 ................................................................................. 3

116 Cong. Rec. 27 (1970) ............................................................... 34, 39

*American Heritage Dictionary of the English Language* 1666
(5th ed. 2011) ................................................................................. 13

Fed. R. App. P. 3 ................................................................................. 3

Fed. R. App. P. 4 ................................................................................. 3

*FTC Advisory Opinion to Coffey* (Feb. 2, 1998) .............................. *passim*

*FTC Advisory Opinion to Hawkey* (Dec. 18, 1997) .................................. 33

*FTC Advisory Opinion to Lewis* (June 11, 1998) .................................... 33

*FTC Advisory Opinion to Weisberg* (June 27, 1997) ............................... 33

*FTC Advisory Opinion to Willner* (Mar. 25, 1999) .............. 17, 22, 25, 26

S. Rep. No. 104-185 (1995) ...................................................................... 18

# STATEMENT OF PERTINENT STATUTORY PROVISIONS

## Fair Credit Reporting Act

### 15 U.S.C. § 1681a(d)(1)

(d) Consumer report

(1) In general

The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title.

(2) Exclusions

Except as provided in paragraph (3), the term "consumer report" does not include--

(A) subject to section 1681s-3 of this title, any--

(i) report containing information solely as to transactions or experiences between the consumer and the person making the report;

(ii) communication of that information among persons related by common ownership or affiliated by corporate control; or

(iii) communication of other information among persons related by common ownership or affiliated by corporate control, if it is clearly and conspicuously disclosed to the consumer that the information may be communicated among such persons and the consumer is given the opportunity, before the time that the information is initially communicated, to direct that such information not be communicated among such persons;

(B) any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device;

(C) any report in which a person who has been requested by a third party to make a specific extension of credit directly or indirectly to a consumer conveys his or her decision with respect to such request, if the third party advises the consumer of the name and address of the person to whom the request was made, and such person makes the disclosures to the consumer required under section 1681m of this title; or

(D) a communication described in subsection (o) or (x).

(3) Restriction on sharing of medical information

Except for information or any communication of information disclosed as provided in section 1681b(g)(3) of this title, the exclusions in paragraph (2) shall not apply with respect to information disclosed to any person related by common ownership or affiliated by corporate control, if the information is--

(A) medical information;

(B) an individualized list or description based on the payment transactions of the consumer for medical products or services; or

(C) an aggregate list of identified consumers based on payment transactions for medical products or services.

## 15 U.S.C. § 1681a(e)

(e) The term "investigative consumer report" means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information. However, such information shall not include specific factual information on a consumer's credit record obtained directly from a creditor of the consumer or from a consumer reporting agency when such information was obtained directly from a creditor of the consumer or from the consumer.

## 15 U.S.C. § 1681b(b)(2)

(2) Disclosure to consumer

(A) In general

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure,

that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

## 15 U.S.C. § 1681d(a)

(a) Disclosure of fact of preparation

A person may not procure or cause to be prepared an investigative consumer report on any consumer unless--

(1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section and the written summary of the rights of the consumer prepared pursuant to section 1681g(c) of this title; and

(2) the person certifies or has certified to the consumer reporting agency that--

(A) the person has made the disclosures to the consumer required by paragraph (1); and

(B) the person will comply with subsection (b).

## 15 U.S.C. § 1681g(c)

x

(c) Summary of rights to obtain and dispute information in consumer reports and to obtain credit scores

(1) Commission1 summary of rights required

(A) In general

The Commission1 shall prepare a model summary of the rights of consumers under this subchapter.

(B) Content of summary

The summary of rights prepared under subparagraph (A) shall include a description of--

(i) the right of a consumer to obtain a copy of a consumer report under subsection (a) from each consumer reporting agency;

(ii) the frequency and circumstances under which a consumer is entitled to receive a consumer report without charge under section 1681j of this title;

(iii) the right of a consumer to dispute information in the file of the consumer under section 1681i of this title;

(iv) the right of a consumer to obtain a credit score from a consumer reporting agency, and a description of how to obtain a credit score;

(v) the method by which a consumer can contact, and obtain a consumer report from, a consumer reporting agency without charge, as provided in the regulations of the Bureau prescribed under section 211(c) of the Fair and Accurate Credit Transactions Act of 2003; and

(vi) the method by which a consumer can contact, and obtain a consumer report from, a consumer reporting agency described in section 1681a(w) of this title, as provided in the regulations of the Bureau prescribed under section 1681j(a)(1)(C) of this title.

(C) Availability of summary of rights

The Commission1 shall--

(i) actively publicize the availability of the summary of rights prepared under this paragraph;

(ii) conspicuously post on its Internet website the availability of such summary of rights; and

(iii) promptly make such summary of rights available to consumers, on request.

(2) Summary of rights required to be included with agency disclosures

A consumer reporting agency shall provide to a consumer, with each written disclosure by the agency to the consumer under this section--

(A) the summary of rights prepared by the Bureau under paragraph (1);

(B) in the case of a consumer reporting agency described in section 1681a(p) of this title, a toll-free telephone number established by the agency, at which personnel are accessible to consumers during normal business hours;

(C) a list of all Federal agencies responsible for enforcing any provision of this subchapter, and the address and any appropriate phone number of each such agency, in

a form that will assist the consumer in selecting the appropriate agency;

(D) a statement that the consumer may have additional rights under State law, and that the consumer may wish to contact a State or local consumer protection agency or a State attorney general (or the equivalent thereof) to learn of those rights; and

(E) a statement that a consumer reporting agency is not required to remove accurate derogatory information from the file of a consumer, unless the information is outdated under section 1681c of this title or cannot be verified.

# INTRODUCTION

Plaintiff-Appellant Daniel Walker respectfully appeals from the decision of the District Court dismissing his claims against Defendant-Appellee Fred Meyer, Inc. for violation of the Fair Credit Reporting Act.

After applying for a job, Walker was hired to work at a Fred Meyer store in Portland, Oregon. Walker was asked to sign a variety of forms during the hiring process, including the consumer report disclosure and authorization forms at issue in this case. Shortly after he was hired, Walker was informed by a third-party consumer reporting agency that he had lost his job as a result of the contents of the consumer report. Walker was given no opportunity to discuss the report with Fred Meyer before he was fired.

Walker filed suit against Fred Meyer on his own behalf and on behalf of an alleged class composed of all others similarly situated, alleging two violations of the Fair Credit Reporting Act ("FCRA"): (1) that Fred Meyer's consumer credit report disclosure and authorization forms impermissibly contained extraneous information that violated the requirements of 15 U.S.C. § 1681b(b)(2)(A); and (2) that Fred Meyer had violated 15 U.S.C. § 1681b(b)(3)(A) by providing inadequate pre-adverse

action notice by not affording Walker a meaningful opportunity to discuss any items in his report with Fred Meyer.

After findings and recommendations were made by the Magistrate Judge, the District Court dismissed the case, concluding that the extraneous information in Fred Meyer's disclosure form did not overshadow the required FCRA disclosure and that the FCRA does not afford employees the opportunity to discuss consumer reports directly with their employer before adverse action is taken.

The District Court erred in its conclusions. First, the District Court's finding that Fred Meyer's consumer report disclosure form was "not overshadowed" by extraneous information was incorrect—the plain language of the FCRA squarely requires consumer report disclosures to consist *solely* of the disclosure. While the District Court cited case law and FTC guidance to expand this requirement, it misapplied those authorities to the case at hand. Second, the District Court erred in dismissing Walker's pre-adverse action notice claim because Fred Meyer's practice of delegating all discussion of consumer reports to a third-party consumer reporting agency contravenes the purpose of the FCRA. The use of a third party to facilitate such discussions undercuts

the Act's goals, particularly in the event explainable, albeit correct, information triggers an adverse action.

In light of these errors, the District Court's Order dismissing the case should be reversed, and the case should be remanded so that it may proceed beyond the pleadings through discovery and, following development of the record, consideration on the merits.

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Oregon had subject matter jurisdiction under 28 U.S.C. § 1331 because this action arose under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, which is a federal statute. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the present appeal is from a final decision, disposing all of the parties' claims, made by the United States District Court for the District of Oregon. The District Court entered its order dismissing Daniel Walker's complaint with prejudice on June 21, 2018. (ER13.) Walker filed notice of appeal on July 19, 2018. (ER01.) The appeal is timely pursuant to Fed. R. App. P. 3 and 4(a)(1)(A) because it was filed within thirty (30) days of the District Court's final order.

## ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred in dismissing Walker's claim for violation of the FCRA's "stand-alone" disclosure requirement where Fred Meyer's disclosure form contains extraneous information, including details regarding the nature and scope of any investigative consumer reports that may be obtained and the process for inspecting GIS's files.

2. Whether the District Court erred in dismissing Walker's claim for violation of the FCRA's pre-adverse action notice requirement where the notice provided Walker with no opportunity to discuss or dispute the consumer report with the employer, Fred Meyer.

## STATEMENT OF THE CASE

In March 2017, Plaintiff-Appellant Daniel Walker ("Walker") applied for a job at one of Defendant-Appellee Fred Meyer Inc.'s ("Fred Meyer") supermarket stores. (ER37.) Shortly after submitting his application, Walker was hired as an associate at a Fred Meyer store in Portland, Oregon. (*Id.*)

As part of the hiring process, Walker was presented with various disclosures and acknowledgements regarding his background. (*Id.*)

4

Specifically, Fred Meyer provided Walker with two documents that he signed: the first was a Disclosure Regarding Consumer Reports and Investigative Consumer Reports (the "Disclosure"), which informs new hires that Fred Meyer will investigate their background through an employment background reporting company, GIS (ER30); the second was an Authorization Regarding Consumer Reports and Investigative Consumer Reports (the "Authorization"), which purports to give GIS authority to conduct such an investigation through a variety of means, including "any public or private information source." (ER31.)

Though the breadth and duplicity of these documents confused Walker, he signed them to proceed with this employment opportunity. (ER38.)

A couple of weeks later, on April 3, 2017, Walker received a pre-adverse action letter from GIS, providing him with a copy of a consumer report procured about him by Fred Meyer. (ER38.) The letter informed Walker that he could dispute the accuracy or completeness of the report with GIS directly by filling out a request form within five (5) business days; the letter provided no method of discussing the report with his new employer, Fred Meyer. (ER32.)

On the fifth business day, April 10, 2017, Walker received a second letter from GIS, informing him that Fred Meyer had decided to fire him based on the consumer report. (ER39.) In the letter, GIS stated that it did not make the decision to fire him, that it was unable to provide him with an explanation of his firing, and that Walker had been given a chance to dispute the report "by contacting the courts in which the information was obtained." (ER33.) Looking for answers, Walker contacted his Human Resources Manager at Fred Meyer, who told him that she was neither aware of the consumer report nor of the fact that Walker was being fired. (ER39.)

On November 8, 2017, Walker filed a complaint against Fred Meyer in the United States District Court, District of Oregon, alleging that Fred Meyer had willfully violated the Fair Credit Reporting Act ("FCRA") by providing an unacceptably unclear disclosure form and by failing to provide a proper pre-adverse action notice. (ER34, ER43, ER45.) Walker sought relief on his own behalf, as well as on behalf of two alleged classes of individuals who had been harmed by the same unlawful forms and procedures. (ER40.)

On December 28, 2017 Fred Meyer filed a motion to dismiss Walker's claims, arguing that Walked had failed to state a claim

pursuant to Fed. R. Civ. P. 12(b)(6) and also that Walker lacks Article III standing to bring the pre-adverse action notice claim pursuant to Fed. R. Civ. P. 12(b)(1). (*See* ER14–15, ER53.)

After Walker's response and Fred Meyer's reply, Magistrate Judge Youlee Yim You issued findings and recommendations on these issues on May 7, 2018. (ER14.) Magistrate Judge You recommended dismissal of Walker's complaint in its entirety, finding that: (1) the disclosure form did not contain impermissible extraneous information (ER20–21); (2) the consumer report disclosure was not overshadowed by investigative report language (ER22–23); (3) neither the FCRA nor the purpose behind it prohibit the use of a third party to discuss reports before an employer takes adverse action (ER24–25); and (4) Walker did not have standing because he did not dispute his consumer report. (ER27–28.) Walker filed his objection to the findings and recommendations on May 21, 2018. (*See* ER54.)

On June 21, 2018, the Court issued an order dismissing Walker's complaint with prejudice. (ER13.) The District Court adopted the findings and recommendations of Magistrate Judge You on all issues except standing. (*Id.*) Specifically, Judge Simon found that Judge You had applied the appropriate legal standards to the pleadings, and he

7

agreed that the consumer report disclosure was not overshadowed by extraneous information. (ER06–07.) The District Court concluded as follows:

> Defendant [Fred Meyer]'s disclosure does differ from that recommended by the FTC in [its advisory opinion to] *Willner*, in that it mentions both reports in the same, initial, disclosure, and then does not distinguish between regular and investigative consumer reports or state whether the information subsequently provided applies to only one or the other. Nonetheless, as Judge You concluded, Defendant's disclosure in this case is consistent with the *Willner* opinion's guidance.

(ER06.) The District Court also agreed with Magistrate Judge You's finding that the FCRA does not require employers to afford employees an opportunity to discuss their consumer reports directly with their employer. (ER13.) Contrary to the findings and recommendations, however, the District Court found that Walker had demonstrated Article III standing to bring his pre-adverse action notice claim against Fred Meyer. (ER10.)

On July 19, 2018, Walker filed timely notice of appeal from the Court's order of dismissal.

## SUMMARY OF THE ARGUMENT

I.    The District Court erred in dismissing Walker's FCRA disclosure claim. The Court's finding that Fred Meyer's consumer report disclosure form was "not overshadowed" by extraneous information and investigative report disclosures was incorrect in light of the FCRA's plain language, applicable case law, and long-standing FTC guidance. The actual wording of the FCRA requires a consumer report disclosure to consist *solely* of the disclosure. The Court below relied instead on case law and FTC guidance that limits this restriction and, in the process, it misapplied those standards—concluding incorrectly that the extraneous information found in Fred Meyer's disclosure was allowable because it did not mirror provisions that other courts had already determined violated the Act.

Fred Meyer's forms (both the disclosure and the associated authorization form) contain surplus disclosures, and it was this extraneous information that confused Walker and unlawfully diverted his attention from the legal purpose of the document. "Solely" means "only." Thus, Fred Meyer's disclosure form violates the FCRA, and the District Court's dismissal of Walker's claim pursuant to 15 U.S.C. § 1681b(b)(2)(A)(i) should be reversed.

9

II.    The District Court also erred in dismissing Walker's pre-adverse action notice claim. Fred Meyer delegates all disputes and discussions regarding consumer reports to a third party, GIS. That is, consumers are directed to speak with GIS, not Fred Meyer, in the event they want to explain any negative items. While the District Court concluded that this practice is permissible, this Court should disagree. As several courts and the FTC have recognized, the purpose of this section of the FCRA is to afford employees a meaningful opportunity to challenge or discuss negative reports with the employer before adverse action is taken. The use of a third party to facilitate and expedite this process is ineffective in achieving the Act's goals, particularly in the event of correct information that influences an adverse action. Fred Meyer's pre-adverse action notice does not comport with the FCRA, and the District Court's dismissal of Walker's claim pursuant to 15 U.S.C. § 1681b(b)(3)(A) should be reversed.

## STANDARD OF REVIEW

A dismissal for failure to state a claim pursuant to Fed.R.Civ. P. 12(b)(6) is reviewed *de novo*. *Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th Cir. 2016), *cert. denied sub nom*. Generally, the scope of review is limited to the contents of the complaint. *Marder v. Lopez*, 450 F.3d 445,

448 (9th Cir. 2006); *Enesco Corp. v. Price/Costco Inc.*,146 F.3d 1083, 1085 (9th Cir. 1998). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Enesco Corp.*, 146 F.3d at 1085.

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN CONCLUDING THAT FRED MEYER'S CONSUMER REPORT DISCLOSURE DID NOT VIOLATE THE FCRA.

The District Court committed reversible error when it granted Fred Meyer's Motion to Dismiss. First, Magistrate Judge You's findings conflict with the plain language of the FCRA—the disclosure document must consist *solely* of the disclosure. Second, to the extent that case law and FTC guidance letters have appropriately expanded those rules, the District Court misapplied even these more relaxed standards. The consumer report disclosure that Fred Meyer provided to Walker and other employees contains extraneous information, particularly regarding investigative reports, that violates the stand-alone disclosure requirement of the FCRA. Additionally, when paired with Fred Meyer's authorization form, the surplus information in these documents creates confusion and distracts employees from the consumer report disclosure required by the statute. The District Court's order dismissing the case

11

was made in error and should therefore be reversed.

### A. The Plain Language Of The FCRA Requires Consumer Report Disclosures To Be Made In A Document That Consists Solely Of The Disclosure And Authorization.

As a preliminary matter, the FCRA unambiguously prohibits the inclusion of extraneous information in a consumer report disclosure form. In light of this statutory language, the District Court erred in dismissing Walker's claim.

Section 1681b(b)(2)(A)(i) of the FCRA requires employers to make a "clear and conspicuous disclosure" to employees or prospective employees of their intent to procure a consumer credit report. 15 U.S.C. § 1681b(b)(2)(A)(i). Without equivocation, Congress declared that this disclosure must be made "in a document that consists **solely** of the disclosure." *Id.* (emphasis added). This is known as the "stand-alone" disclosure requirement.

The Court has recognized that the stand-alone disclosure requirement is not just a surplus provision—it means what it plainly says. "That other FCRA provisions mandating disclosure omit the term 'solely' is further evidence that Congress intended that term to carry meaning in 15 U.S.C. § 1681b(b)(2)(A)(i)." *Syed v. M-I, LLC*, 853 F.3d 492, 501 (9th Cir. 2017). Of course, it is the duty of courts to "give effect,

12

if possible, to every clause and word of a statute." *Id.* (quoting *United States v. Mechasche*, 348 U.S. 528, 538–39 (1955)).

As drafted, the stand-alone requirement of section 1681b(b)(2)(A)(i) is remarkably unambiguous:

> We must begin with the text of the statute. Where congressional intent "has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S. Ct. 3245, 73 L.Ed.2d 973 (1982) (internal quotation marks omitted). And when "the meaning of the words seems to us to be intelligible upon a simple reading, ... we shall spend no time upon generalities concerning the principles of [statutory] interpretation." *United States v. M.H. Pulaski Co.*, 243 U.S. 97, 106, 37 S.Ct. 346, 61 L.Ed. 617 (1917).
>
> **The ordinary meaning of "solely" is "[a]lone; singly" or "[e]ntirely; exclusively."** *American Heritage Dictionary of the English Language* 1666 (5th ed. 2011)

*Syed*, 853 F.3d at 500 (emphasis added).  Thus, the FCRA mandates that the disclosure form contain nothing more than the disclosure. Admittedly, the statute does provide one exception to the rule, allowing the inclusion of an authorization with the disclosure. *See* 15 U.S.C. § 1681b(b)(2)(A)(ii). But, as the Court noted, "in light of Congress's express grant of permission for the inclusion of an authorization, the familiar judicial maxim *expressio unius est exclusio alterius* counsels against finding additional, implied, exceptions." *Syed*, 853 F.3d at 501.

13

Under a plain reading of the FCRA's clear wording, a consumer report disclosure form must be limited in content to the disclosure itself and an authorization of the report. *Any* additional information results in the form not consisting "solely" of the disclosure and conflicts directly with the stand-alone requirement of § 1681b(b)(2)(A)(i). Therefore, any extraneous information, save for the authorization, contained in Fred Meyer's disclosure form violates the FCRA. Likewise, because the FCRA requires disclosure to be "clear and conspicuous," a disclosure that is muddled with unnecessary information or confusing to consumers violates the FCRA.

By holding otherwise, and by concluding that extraneous information must overwhelm the consumer report disclosure the District Court improperly disregarded the plain language of the statute. That is, Plaintiff alleged that the extraneous information confused him. In Congress's judgment this was improper—nothing more was required. Fred Meyer's disclosure form is not clear and conspicuous, and it does not consist solely of the required disclosure. Accordingly, Fred Meyer has violated the FCRA.

**B.    The Lower Court Incorrectly Found That The Extra Information In Fred Meyer's FCRA Disclosure Was Allowed Under Caselaw And FTC Guidance.**

Despite the plain language of the statute, some courts and the Federal Trade Commission ("FTC") have read an additional, implied exception into the FCRA's stand-alone requirement for items closely related to the disclosure. These expansions were identified, and ultimately misapplied, by the District Court and Magistrate Judge You. That is, even if the Court were to apply the expansive authorities cited by the District Court, Walker has stated a plausible claim for relief and his claims should survive a motion to dismiss.

As stated above, the FCRA's stand-alone disclosure requirement is unambiguous. As a result, any interpretation of the statute by the FTC is not entitled to deference:

> When a court reviews an agency's construction of the statute which it administers, [1] it is confronted with two questions. First, always, is the question of whether Congress had directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–

---

[1] The FTC is tasked with enforcement of the FCRA pursuant to 15 U.S.C. § 1681s(a)(1).

43 (1984). Nothing in the statute defers interpretation of the consumer report disclosure provisions to the FTC.

Nevertheless, some courts have adopted the FTC's guidance with respect to FCRA disclosures and have allowed limited additional information to be included in a consumer report disclosure, particularly when that information is closely related to the disclosure. *See Lagos v. Leland Stanford Junior Univ.*, No. 5:15-cv-04524-PSG, 2015 WL 7878129, at *1–2 (N.D. Cal. Dec. 4, 2015); *Peikoff v. Paramount Pictures Corp.*, No. 15-cv-00068-VC, 2015 WL 13650922, at *1 (N.D. Cal. Mar. 26, 2015). The FTC's interpretation expands the stand-alone requirement, but with a clear limit:

> Section 604(b)(2)(A) specifically states that the document containing the required disclosure may not include other items.... It is our view that Congress intended that the disclosure not be encumbered with extraneous information. However, some additional information, such as a brief description of the nature of the consumer reports covered by the disclosure, may be included if the information does not confuse the consumer or detract from the mandated disclosure.

*FTC Advisory Opinion to Coffey* (Feb. 2, 1998). In its *Willner* opinion the following year, the FTC emphasized that any additional information must not overshadow the disclosure, specifically when detailing to the nature and scope of investigative reports:

16

Section 604(b)(2)(A)'s requirement that the disclosure by employers of any consumer report (investigative or other) be in a stand-alone document raises the issue of what (if any) other items may be included on that document.... [T]he intent of this provision is to insure [sic] that the disclosure appears conspicuously in a document ***unencumbered by other information***.... [W]e opined that the employer could also include the authorization required by Section 604(b)(2)(B), because the authorization would contain ***limited*** verbiage and would enhance the Section 604(b)(2)(A) disclosure, rather than detract from it. We believe that a ***limited*** Section 606(a) disclosure [informing employees that an investigative report may be requested] would also be permissible, on the same theory.... However, a Section 606(b) notice setting forth the nature and scope of the investigation would of necessity be much more detailed and would likely be held to *overshadow* 604(b) disclosure in violation of 604(b)(2)(A). Therefore, we believe that an employer may combine *only a very limited* Section 606(a) notice with the general Section 604(b)(2)(A) notice without running afoul of the latter section's requirement that the required disclosure be in a stand-alone document. **The surest way for an employer to comply, of course, would be to provide the Section 604(b)(2)(A) notice and the Section 606 notice in separate documents.**

*FTC Advisory Opinion to Willner* (Mar. 25, 1999) (emphasis added). The

FTC's interpretation in *Willner*, if adopted notwithstanding its

contravention of the statute's plain language, prescribes the *maximum*

allowable inclusions—it is a ceiling, not a floor. Any further information

runs afoul of § 1681b(b)(2)(A)(i) and its intent.

Similarly, Congress provided the express exception for the

authorization with the disclosure because it is "consistent with the

purpose of the statute....to protect consumers from 'improper invasion[s] of privacy.'" *Syed*, 853 F.3d at 501 (quoting S. Rep. No. 104-185 at 35 (1995)). In *Syed*, the Court found that a liability waiver included in the FCRA disclosure violated the statute because "it pulls the applicant's attention away from his privacy rights protect by the FCRA"—in other words, it is extraneous information that confuses the consumer and detracts from the mandated disclosure. *Id.* at 502.

Liability waivers are routinely held to violate the FCRA when included in the § 1681b(b)(2)(A)(i) disclosure form. *See, e.g.*, *id.*; *Cunha v. Intellicheck, LLC*, 254 F. Supp. 3d 1124, 1130 (N.D. Cal. 2017); *Case v. Hertz Corp.*, No. 15–cv–02707–BLF, 2016 WL 1169197, at *5 (N.D. Cal. Feb. 26, 2016), *Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378, 1388 (N.D. Cal. 2014) ("[I]t is quite clear (and seems undisputed) that American DataBank's 'Disclosure & Release Form' would have violated Section 1681b(b)(2)(A)(i) by containing a release."). Yet such provisions are by no means the only type of extraneous information employers include on such forms.

Violations of the FCRA have also been found, for example, where the disclosure form includes authorization for sharing of the consumer

reports,[2] authorization allowing other entities to disclose information about the applicant,[3] a URL link to a privacy policy, an acknowledgment of another document, and a statement that protected health information could be obtained through workers' compensation documents,[4] in addition to lengthy state law provisions.[5] Under these cases, a violation § 1681b(b)(2)(A)(i) does not depend on any particular provision but rather whether the material in question is "extraneous information" that confuses or distracts the employee, thereby detracting from the mandatory disclosure. *See Syed*, 853 F.3d at 502; *Case*, 2016 WL 1169197, at *5; *FTC Advisory Opinion to Coffey* (Feb. 2, 1998).

In her finding and recommendations, Magistrate Judge You misinterpreted these examples as an exhaustive list of provisions that may violate the Act: "The Fred Meyer Disclosure offends none of these prohibitions." (ER21.) Ultimately, by determining that the information challenged by Walker did not match the information included in the

---

[2] *Meza v. Verizon Commc'ns, Inc.*, No. 1:16-CV-0739 AWI MJS, 2016 WL 4721475, at *2 (E.D. Cal. Sept. 9, 2016).
[3] *Feist v. Petco Animal Supplies, Inc.*, 218 F. Sup. 3d 1112, 1113 (S.D. Cal. 2016).
[4] *Poinsignon v. Imperva, Inc.*, No. 17-cv-05653-EMC, 2018 WL 1709942, at *3 (N.D. Cal. Apr. 9, 2018).
[5] *Lagos*, 2015 WL 7878129, at *2; *Case*, 2016 WL 1169197, at *5.

cited cases, Magistrate Judge You concluded that the disclosure form was "statutorily sufficient." (ER22.) But this recommendation ignores the underlying rule—that the stand-alone disclosure mandated by Section 1681b(b)(2)(A)(i) may not be encumbered with *any* extraneous information that confuses or detracts from the disclosure. Magistrate Judge You's binary comparison to other cases, rather than analysis by considering the effect of Fred Meyer's additional language, was an erroneous misapplication of legal authority.

Magistrate Judge You also relied heavily on *Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-cv-02588-JCS, 2015 WL 5782352 (N.D. Cal. Oct. 5, 2015). In *Coleman*, the court listed information that was included in the challenged form, but the issue of whether such information was extraneous was not even before the court. *Id.*at *2, 5. Magistrate Judge You cited *Coleman* for the proposition that including certain information is permissible, but the *Coleman* court only considered the plaintiff's theory "that the Employment Application and Consent and Disclosure Form are, in actuality, one document as 'part of the same employment packet.'" *Id.* at *5–6. The court's finding that the forms stood alone turned on titles, paper orientation, and the presence of signatures—not on the information included. *Id.* at *5. In other

20

words, the claim at issue in *Coleman* is incongruous with Walker's claim, and the holding is neither compatible with nor relevant to this case.

Walker objected to Magistrate Judge You's misuse of these authorities, but the District Court adopted her analysis, dismissing Walker's objection in a single paragraph. (ER06.) The District Court did not contradict Magistrate Judge You's "elimination by comparison" use of example cases, and it furthered the erroneous application of (ultimately questionable) legal standards to the Disclosure at issue.

## C. Extraneous Information Included In Fred Meyer's Disclosure Form Confused Walker And Violated The FCRA.

To the extent that Magistrate Judge You and the District Court concluded that Fred Meyer's disclosure form did not contain extraneous information, they committed reversible error. Whether viewed under the unambiguous mandate of the FCRA or the guidance of the FTC and other courts, the disclosure form includes a variety of extraneous information that confused Walker and other employees and detracted from the required disclosure. As a result, Fred Meyer violated Section 1681b(b)(2)(A)(i), and the District Court's order dismissing Walker's claim should be reversed.

21

As explained above, Section 604(b)(2)(A) specifically states that the document containing the required disclosure must consist "solely" of the disclosure—it may not be encumbered with extraneous information. 15 U.S.C. § 1681b(b)(2)(A)(i); *FTC Advisory Opinion to Coffey* (Feb. 2, 1998). To the extent that the Court might adopt an implied exception for additional information, it must be closely related to the disclosure, such as a brief description of the nature of the consumer reports covered by the disclosure. *FTC Advisory Opinion to Coffey* (Feb. 2, 1998); *Case*, 2016 WL 1169197, at *3.

Impermissible extraneous information can come in many forms. As noted by the FTC, details regarding the nature and scope of investigative reports are extraneous information that would overshadow the simple disclosure required by § 1681b(b)(2)(A)(i). *FTC Advisory Opinion to Willner* (Mar. 25, 1999). In *Syed*, a liability waiver was extraneous and impermissible because it pulled attention away from the disclosure. *Syed*, 853 F.3d at 502. Likewise, the court in *Case* recognized a wide array of information that was extraneous in a disclosure form:

> Notwithstanding Hertz's arguments to the contrary, the Sterling Form does not appear to be a stand-alone disclosure. The Court finds that Case's allegations are sufficient to state

> a claim. The form includes, among other things, information regarding time frames within which the applicant must challenge the accuracy of his or her consumer report, disclosures regarding the circumstances under which the applicant may receive a copy of the report, an acknowledgement that "all employment decisions are based on legitimate non-discriminatory reasons," and a state-specific disclosure unrelated to Case's potential employment in California, together constitute extraneous information in violation of the FCRA stand-alone requirement.

*Case*, 2016 WL 1169197, at *5. The common thread among such extraneous provisions is that they detract from the disclosure and confuse employees—when the form is clouded with additional information, applicants are less able to understand what they are signing, and thus less able "to control the dissemination of sensitive personal information," which is the purpose of the FCRA. *Syed*, 853 F.3d at 502.

As Walker alleged in his complaint, Fred Meyer's FCRA disclosure form contains confusing, extraneous information. (ER38.) The text of the disclosure form, in its entirety, provides as follows:

> We (The Kroger family of companies) will obtain one or more consumer reports or investigative consumer reports (or both) about you for employment purposes. These purposes may include hiring, contract, assignment, promotion, re-assignment, and termination. The reports will include information about your character, general reputation, personal characteristics, and mode of living.

We will obtain these reports through a consumer reporting agency. The consumer reporting agency is General Information Services, Inc. GIS's address is P.O. Box 353, Chapin, SC 29036. GIS's telephone number is (866) 265-4917. GIS's website is at www.geninfo.com.

To prepare the reports, GIS may investigate your education, work history, professional licenses and credentials, references, address history, social security number validity, right to work, criminal record, lawsuits, driving record and any other information with public or private information sources.

You may inspect GIS's files about you (in person, by mail, or by phone) by providing Identification to GIS. If you do, GIS will provide you help to understand the files, including communication with trained personnel and an explanation of any codes. Another person may accompany you by providing identification.

If GIS obtains any information by interview, you have the right to obtain a complete and accurate disclosure of the scope and nature of the Investigation performed.

(ER30.) Though this document attempts to satisfy § 1681b(b)(2)(A)(i), it is replete with extraneous statements that detract from the disclosure and distract employees from their rights at issue.

The first paragraph begins with a simple disclosure statement, but it then quickly blurs the line between consumer reports and investigative reports. The description of "the reports" as including information relating to character, general reputation, personal characteristics, and mode of living is the heart of an investigative

24

report—there is no mention of credit worthiness or capacity, which are the distinguishing data in a consumer report. *Compare* 15 U.S.C. § 1681a(d)(1) (defining "consumer report"), *with* 15 U.S.C. § 1681a(e) (defining "investigative consumer report"). In any event, once the disclosure wraps the two unique reports into one plural designation, it does not make any distinction between the two and does not alert employees as to which it refers.

While the second paragraph provides basic information about the report agency, which may be helpful to employees, the third paragraph provides a detailed description of the nature and scope of GIS's investigation. This is precisely the overshadowing information of which the FTC warned in its *Willner* opinion. *FTC Advisory Opinion to Willner* (Mar. 25, 1999). The District Court concluded that there was "no further mention of the nature or scope of a potential investigative report" after the first paragraph, but this is plainly incorrect. (ER06–07.) The second paragraph warns that GIS may "investigate" a variety of sources, including references and "any other information with public or private sources."[6] (ER30.) This cannot plausibly be interpreted as

---

[6] Factors like credit worthiness and capacity are notably absent from the list of investigated information.

describing a consumer report, as it broadly provides for the investigation and interview of references, friends, neighbors, and associates—the nature and scope of an investigative report. *See* 15 U.S.C. § 1681a(e).

The fourth paragraph provides further extraneous information, detailing the process by which applicants can inspect GIS's files. This paragraph is not closely related to the consumer report disclosure—it serves only to further pull the employee's attention away from the required disclosure and their privacy rights protected by the FCRA.

Finally, the fifth paragraph refers yet again to investigative reports. While this paragraph is similar to a limited inclusion that the FTC deemed "sufficiently brief" in *Willner*, it appears here in aggregation with the first and third paragraphs that refer to investigative reports. *See FTC Advisory Opinion to Willner* (Mar. 25, 1999). Read together, these repeated references to the nature and scope of investigative reports overshadow the disclosure mandated by § 1681b(b)(2)(A)(i). Fred Meyer's disclosure form contains extraneous information and is overshadowed by details regarding investigative reports—the form was confusing to Walker and other applicants, and it violates the FCRA.

The District Court came very close to recognizing this form as improper: "Defendant's disclosure does differ from that recommended by the FTC in *Willner*, in that it mentions both reports in the same, initial, disclosure, and then does not distinguish between regular and investigative consumer reports or state whether the information subsequently provided applies to only one or the other." (ER06.) But the court failed to recognize that the extraneous information in the form, especially in paragraph three, details the scope of investigative reports and what GIS may "investigate." (ER30.) Further, the District Court's order did not even address the extraneous information regarding inspection of GIS's files. Magistrate Judge You erred in concluding that the form was proper, and the District Court erred in adopting her findings and recommendations to dismiss the case.

The extraneous information included in Fred Meyer's FCRA disclosure form confuses applicants like Walker and detracts from the disclosure, and the form is overshadowed by details about investigative consumer reports. As such, the disclosure form violates the FCRA, and the District Court's order dismissing the case should be reversed.

### D. Fred Meyer's Authorization Form Further Blurs The Distinction Between Consumer Reports And Investigative Reports And Distracts Employees From The Purpose Of The Documents.

As if to compound the confusion caused by its disclosure form, Fred Meyer's companion Authorization form further muddles the two types of reports. The second form requires employees to authorize the provision of some amalgam report, ostensibly based on any and all information that GIS can find. This form underscores the confusing and distracting nature of Fred Meyer's disclosure form, thereby reinforcing Walker's claim for violation of § 1681b(b)(2)(A)(i).

Along with the consumer report disclosure requirement, the FCRA mandates that the consumer must also "authorize[] in writing (which authorization may be made on the [disclosure document]) the procurement of the report by that person." 15 U.S.C. § 1681b(b)(2)(A)(ii). The authorization requirement is a necessary companion to the disclosure requirement:

> Congress passed Section 1681b(b)(2)(A) in order to protect consumers from "improper invasion[s] of privacy," and the disclosure and authorization requirements fit hand in glove to achieve that purpose. Indeed, each would be largely ineffective on its own. Had the statute required disclosure without conditioning the procurement of a consumer report on the job applicant's authorization, it would have failed to give the applicant control over the procurement of the personal

> information contained in the consumer report. On the other
> hand, had the statute conditioned the procurement of a report
> on the job applicant's authorization without mandating clear
> disclosure by the prospective employer, Congress's purpose
> would have been frustrated because applicants would not
> understand what they were authorizing. The disclosure and
> authorization clauses therefore work in tandem to further the
> congressional purpose of protecting consumers from
> "improper invasion[s] of privacy."

*Syed*, 853 F.3d at 501 (citations omitted). Indeed, an applicant's

decision to authorize the procurement of a consumer report "may be

better informed if the authorization immediately follows the disclosure."

*Id.*

Fred Meyer provided Walker with a separate authorization form,

which immediately followed his disclosure form. (ER31.) Like the

disclosure form, this form does not make any helpful distinction

between consumer reports and investigative reports. Beginning with its

title—"Authorization Regarding Consumer Reports and Investigative

Consumer Reports"—the form appears to describe both, simultaneously.

In relevant part, the authorization states the following:

> Authorization: By signing below, you authorize: (a) General
> Information Services ("GIS") to request information about you
> from any public or private source; (b) anyone to provide
> information about you to GIS; (c) GIS to provide us (the
> Kroger family of companies) one or more reports based on that
> information; and (d) us to share those reports with others for
> legitimate business purposes related to your employment.

29

> GIS may investigate your education, work history, professional licenses and credentials, references, address history, social security number validity, right to work, criminal record, lawsuits, driving record, credit history, and any other information with public or private information sources.

(*Id.*) The authorization form is broad, covering information from "any public or private source" and "anyone" at all, and permitting Fred Meyer to share the reports. (*Id.*) The second sentence above repeats the nature and scope of investigative reports as detailed in the disclosure form, save for one addition: credit history. Credit information is a distinguishing quality of a consumer report, but it is indifferently included with the details about the extent of GIS's investigations. Just as the disclosure makes it unclear what type of report Fred Meyer will obtain, the authorization makes it unclear what type of report applicants are authorizing.

The District Court pointed out in its order that the FCRA "does not require that an authorization consist solely of the authorization, as it does for the disclosure." (ER07.) While it may be true that extraneous information doesn't render an authorization unlawful like it does to disclosure forms, the two forms "work in tandem," informing employees of the report that will be sought before they agree to its procurement.

30

*See Syed*, 853 F.3d at 501. Simple forms presented together can clarify the FCRA rights at issue while convoluted forms can amplify confusion. In this instance, the latter is true—Fred Meyer's forms worked together to obscure their purpose and deprive Walker of conspicuous notice of his rights under the FCRA.

The District Court erred by largely ignoring the interplay of these documents and considering only whether the authorization presented its own FCRA violation. Fred Meyer's authorization form reiterates the confusing terms of the disclosure, making the claims for extraneous inclusion and overshadowing even stronger. The District Court's order dismissing Walker's § 1681b(b)(2)(A)(i) claim should be reversed.

## II. THE DISTRICT COURT ERRED IN CONCLUDING THAT FRED MEYER'S PRE-ADVERSE ACTION NOTICE DID NOT VIOLATE THE FCRA.

The District Court also erred when it dismissed Walker's pre-adverse action notice claim. Though Fred Meyer provided Walker with notice and a copy of his consumer report, this notice delegated any discussion of the report to GIS, a third party with no authority or ability to reconsider the planned adverse action. The District Court deemed this delegation permissible, but it is purely perfunctory and contravenes the purpose of the pre-adverse action notice requirement.

31

Courts and the FTC have long recognized that the purpose of Section 1681b(b)(3)(A) of the FCRA is to afford employees a real opportunity to dispute or discuss negative reports and change their employer's mind before adverse action is taken. Substituting GIS in place of Fred Meyer to facilitate the discussion process frustrates the goals of the FCRA. Further, in the event of *accurate* negative information, which applicants have a right to explain, discussion with a reporting agency would be fruitless and nonsensical. Fred Meyer's pre-adverse action notice and process fail to comport with the FCRA, and the District Court's dismissal of Walker's claim for violation of § 1681b(b)(3)(A) should be reversed.

### A. Fred Meyer Diverts Discussions Regarding Consumer Reports To A Third Party, Thereby Frustrating The Purpose Of The FCRA's Pre-Adverse Action Notice Requirement.

By referring Walker and other employees to GIS for all consumer report discussions and disputes, Fred Meyer denies applicants a meaningful chance to change its mind and frustrates the purpose of the FCRA's pre-adverse action notice requirement.

Section 1681b(b)(3)(A) of the FCRA mandates that, before an employer can take adverse action against an employee or job applicant

based on a consumer report, the employer must provide the consumer with a copy of the report and a description of their rights under the FCRA. 15 U.S.C. § 1681b(b)(3)(A). One of these rights, mentioned explicitly in the statute, is the right to dispute the information contained in the report. *See id.* § 1681b(b)(3)(B)(i)(IV). The right to dispute is "among the most important the FCRA gives consumers." *FTC Advisory Opinion to Weisberg* (June 27, 1997).

This right, however, is not limited to simply correcting erroneous information provided by the reporting agency. The FTC has reiterated in multiple advisory opinions that the purpose of the period between pre-adverse action notice and adverse action—the period during which applicants can challenge or explain the consumer report—is "to allow consumers to discuss the report *with employers* before adverse action is taken." *FTC Advisory Opinion to Lewis* (June 11, 1998); *FTC Advisory Opinion to Coffey* (Feb. 11, 1998) (Emphasis added).[7]

---

[7] Prior to these opinions, in its *Hawkey* letter, the FTC noted the purpose as "to allow consumers to discuss reports with employers or otherwise respond before adverse action is taken." *FTC Advisory Opinion to Hawkey* (Dec. 18, 1997). This "otherwise respond" language is notably absent from guidance letters that followed *Hawkey*.

Indeed, the FCRA was designed to counterbalance the ubiquity of computerized reports and data: "the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 632 (E.D. Va. 2016) (quoting 116 Cong. Rec. 27, at 36570 (1970)). In light of this danger the FCRA gives consumers the right "to have time to discuss the reports *with their current or prospective employers*...before the contemplated adverse action is taken." *Id.* at 638.

Thus, "to comply with the statute, an employer who intends to take adverse action must give the applicant an opportunity to change the employer's mind." *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 633 (D. Or. 2015). The requirement isn't illusory; rather, the opportunity must be real—the decision to take adverse action must be sufficiently tentative so the applicant can provide information to affect the final decision, and the applicant must have enough time to meaningfully contest or explain the report. *Id.* at 634 (citing *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 540 (E.D. Pa. 2012)). Put simply, an employer cannot fire employees based

34

solely on consumer reports without first letting the employees tell their side of the story. *See Thomas*, 193 F. Supp. 3d at 638.

In this case, Fred Meyer failed to provide such an opportunity to Walker and other applicants. When sending him a copy of his consumer report on April 3, 2017, GIS informed Walker that he could "dispute the accuracy or completeness of any information contained in the report by contacting GIS directly." (ER32.) However, in its letter notifying Walker that he was fired on April 10, 2017, GIS made clear that it "did not make the decision...to discontinue [his] employment, and is unable to provide [him] with specific reasons why" he was fired. (ER33.) Thus, the only dispute opportunity provided by Fred Meyer is with GIS—a third party that admittedly had neither the authority nor the knowledge to make hiring decisions.[8] Walker had no real opportunity to change Fred Meyer's mind before he was fired.

Both Magistrate Judge You and the District Court erred in concluding that Fred Meyer's pre-adverse action notice was sufficient.

---

[8] In the firing letter, GIS bizarrely claims that Walker had a chance to dispute information "by contacting the courts in which the information was obtained." (ER33.) Such a statement reveals a desire to sidestep Walker's right to address his report and divert his disputes even farther from Fred Meyer, his employer.

Magistrate Judge You recognized the holding of *Magallon*—that an employer must give an employee a chance to change its mind before taking adverse action—but she nevertheless found that diverting this opportunity to a third party was permissible. (ER24–25); *see Magallon*, 311 F.R.D. at 633. Magistrate Judge You also concluded that the FTC's *Coffey* opinion, which reinforces "the clear purpose of the [§ 1681b(b)(3)] provision to allow consumers to discuss the report with employers before adverse action is taken," somehow applies only to the amount of time given for disputes. (ER26); *see FTC Advisory Opinion to Coffey* (Feb. 11, 1998). But time without meaningful opportunity does not comply with the FCRA. *See Magallon*, 311 F.R.D. at 633 ("[A] *pro forma* period between the preliminary decision and final decision does not satisfy the statute.").

The District Court largely adopted Magistrate Judge You's interpretation of *Coffey* but went further to say that "no provision of the FCRA or persuasive case law" suggests that Fred Meyer's failure to inform applicants of their right to discuss the report directly with the company was deficient under the FCRA. (ER13.) This conclusion was plainly made in error and conflicts with the authorities cited above. Fred Meyer's pre-adverse action notice failed to give Walker and other

employees a meaningful opportunity to explain their reports and change their employer's mind, and the District Court's order dismissing Walker's § 1681b(b)(3) claim should accordingly be reversed.

**B.    When Information Is Correct, Discussion With A Third Party Cannot Achieve The Purpose Of The FCRA.**

That the District Court erred in concluding the FCRA allowed Fred Meyer to divert all discussion of negative consumer reports to GIS becomes particularly apparent when considering applicants whose reports contain correct information. When negative information is accurate, explaining the report to the reporting agency would be meaningless and futile.

As the District Court correctly recognized, "Congress did not condition the protections in the FCRA on the accuracy or inaccuracy of the information contained in the consumer report." (ER11.) When an employer procures a consumer report for hiring purposes, "information that is true but amenable to contextual explanation, delivered without time to provide that explanation, does create a risk of real harm." *Mix v. Asurion Ins. Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140, at *5 (D. Ariz. Dec. 14, 2016). In the case of correct information, harm occurs when applicants are deprived of the

opportunity to explain negative reports and "tell their side of the story" to their employers before suffering adverse action. *See Thomas*, 193 F. Supp. 3d at 638.

Here, Fred Meyer delegates all discussions of "accuracy or completeness" to GIS. (ER32.) Though a discussion with GIS regarding *inaccurate* reports may be of use to applicants, explaining their side of the story to GIS for *accurate* records would be of no avail. As GIS admits, it plays no part in the hiring decisions and cannot provide an explanation for adverse action. (ER33.) In other words, applicants cannot change the mind of Fred Meyer by providing GIS with context or completeness for a negative entry—GIS effectively has no mind to change.

Given that compliance with the FCRA requires employers to give applicants a real opportunity to address their reports and provide contextual details regarding their circumstances, Fred Meyer's delegation of discussions to GIS is inadequate. The "opportunity" that Fred Meyer creates is a perfunctory, five-business-day window during which applicants can only dispute the accuracy of reports with the

reporting agency.[9] If the report contains correct, negative information
that the employee would like to explain, there is no recourse: GIS is
concerned only with whether its reports are correct, not whether further
explanation could prevent adverse action. And, as Walker found when
seeking clarification from his supervisors, attempting to discuss the
adverse report with Fred Meyer would be equally fruitless—Walker was
told by his Human Resources Manager that she was neither aware of
the report nor that Walker was being fired. (ER39.) Thus, when an
employee's consumer report contains correct, negative information,
Fred Meyer does not inform them of any opportunity for recourse and
completely deprives them of the right to explain their side of the story
before they are fired. In effect, Fred Meyer's adverse action procedures
reduce the hiring process to an unthinking machine that renders the
character of applicants to impersonal blips, precisely as Congress feared
would become the case without the FCRA. *See Thomas*, 193 F. Supp. 3d
at 632 (quoting 116 Cong. Rec. 27, at 36570 (1970)).

Though Fred Meyer may claim that referring disputes of

---

[9] In Walker's case, this dispute period of five business days was cut
short, as he received notice of his firing on the fifth business day after
GIS sent the report. (*See* ER32, ER33.)

inaccurate information to GIS satisfies the FCRA, it does not. Fred Meyer's pre-adverse action notice is insufficient because it fails to give applicants an opportunity to discuss their consumer reports with their employer before adverse action is taken. Employees with inaccurate reports are told to dispute their reports with GIS, but they have no real opportunity to discuss the report with Fred Meyer. Employees with accurate reports have no avenue for discussion at all. For these reasons, Fred Meyer's pre-adverse action notice violates the FCRA, and the District Court's order dismissing the case should be reversed.

## CONCLUSION

The District Court erred in concluding that Fred Meyer's FCRA Disclosure complied with the Act. Fred Meyer's Disclosure contains extraneous information in derogation of the plain language of the statute, and the added provisions exceed the limited additional disclosures permitted under the FTC's more lenient guidance. Likewise, Fred Meyer's adverse action process violates the statute because, by forcing consumers to take all disputes to GIS, applicants and employees are denied the opportunity to meaningfully discuss their reports with Fred Meyer.

As such, the judgment of the District Court dismissing the claims

40

should be reversed, and the case remanded for discovery and

consideration of Walker's claims on their merits.

Dated: November 28, 2018          Respectfully submitted,

                                  By: /s/ Patrick H. Peluso
                                  Attorneys for Plaintiff-Appellant

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Plaintiff-Appellant Daniel Walker herein identifies all "known related case[s] pending in this court." Walker states that, following a diligent inquiry, there are no other related appeals or other cases pending in this Court.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. 32(a)(7)(C), I certify that:

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,111 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), as well as the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.

Dated: November 28, 2018          Respectfully submitted,

                                  By: /s/ Patrick H. Peluso
                                  Attorneys for Plaintiff-Appellant

# PROOF OF SERVICE

I am employed in the State of Colorado, County of Denver. I am over the age of 18 and not a party to the within suit; my business address is 3900 E Mexico Avenue, Suite 300, Denver, Colorado 80210.

On November 28, 2018, I served the document described as: **OPENING BRIEF** on the interested parties in this action by sending a true copy thereof to all counsel of record.

[]     BY MAIL (ENCLOSED IN A SEALED ENVELOPE): I deposited the envelope(s) for mailing in the ordinary course of business at Denver, Colorado. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. Under that practice, sealed envelopes are deposited with the U.S. Postal Service that same day in the ordinary course of business with postage thereon fully prepaid at Denver, Colorado.

[x]     BY E-MAIL: I hereby certify that this document was served from Denver, Colorado, by e-mail delivery on all counsel of record at their most recent known email address or e-mail of record in this action.

[ ]     BY FAX: I hereby certify that this document was served from Denver, Colorado, by facsimile delivery on the parties listed herein at their most recent fax number of record in this action.

[ ]     BY PERSONAL SERVICE: I delivered the document, enclosed in a sealed envelope, by hand to the offices of the addressee(s) named herein.

[ ]     BY OVERNIGHT DELIVERY VIA UNITED PARCEL SERVICE: I am "readily familiar" with this firm's practice of collection and processing correspondence for overnight delivery. Under that practice, overnight packages are enclosed in a sealed envelope with a packing slip attached thereto fully prepaid. The packages are delivered by our office to a designated collection site.

I declare under penalty of perjury that the foregoing is true and

correct.

Executed this November 28, 2018 at Denver, Colorado.


Patrick H. Peluso                                    /s/ Patrick H. Peluso
Type or Print Name                              Signature