No. 18-35592

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

DANIEL WALKER,

*Plaintiff-Appellant*,

v.

FRED MEYER, INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Oregon, Portland Division,
No. 3:17-cv-01791-YY
Hon. Michael H. Simon

---

DEFENDANT-APPELLEE'S ANSWERING BRIEF

---

Michael Porter
Oregon State Bar No. 003560
mike.porter@millernash.com
Taylor D. Richman
Oregon State Bar No. 154086
taylor.richman@millernash.com
MILLER NASH GRAHAM
& DUNN LLP
111 S.W. Fifth Avenue, Suite 3400
Portland, Oregon 97204
Telephone: (503) 224-5858

Faith C. Whittaker
Ohio State Bar No. 0082486
faith.whittaker@dinsmore.com
Michael B. Mattingly
Ohio State Bar No. 0089847
michael.mattingly@dinsmore.com
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8397

*Attorneys for Defendant-Appellee Fred Meyer, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Defendant Fred Meyer, Inc., by their attorneys, Dinsmore & Shohl LLP and Miller Nash Graham & Dunn LLP, certify pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure that:

Fred Meyer, Inc., a nongovernmental corporate party, certifies that other than its parent corporation, The Kroger Co., which is a publicly-held corporation, there are no publicly-held corporations which own more than 10% of Fred Meyer, Inc.'s stock.

DATED this 28th day of January, 2019.

DINSMORE & SHOHL LLP

s/Faith C. Whittaker
Faith C. Whittaker, Ohio State Bar No. 0082486

*Attorneys for Defendant-Appellee*
*Fred Meyer, Inc.*

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ..................................................................v

ISSUES PRESENTED FOR REVIEW ..........................................................1

SUMMARY OF THE ARGUMENT ...........................................................1

STANDARD OF REVIEW ................................................................4

ARGUMENT ..........................................................................4

I.     THE DISTRICT COURT CORRECTLY CONCLUDED THAT
FRED MEYER'S § 1681b(b)(2)(A)(i) DISCLOSURE DID NOT
VIOLATE THE FCRA AS A MATTER OF LAW .........................................4

     A.     Plaintiff-Appellant's Argument That § 1681b(b)(2)(A)(i) Forbids
The Inclusion Of *Any* Extraneous Language In The Disclosure Is
Unavailing ...........................................................6

     B.     The District Court Properly Analyzed The FCRA's Disclosure
Requirements And Correctly Determined Fred Meyer's
§ 1681b(b)(2)(A)(i) Disclosure Was Compliant As A Matter
Of Law ...........................................................10

          i.     The District Court Appropriately Dismissed Plaintiff-
Appellant's § 1681b(b)(2)(A)(i) Claim As A Matter Of Law..10

          ii.    The District Court Correctly Held That Fred Meyer's
§ 1681b(b)(2)(A)(i) Disclosure Did Not Contain Any
Impermissible Extraneous Information. ...................................11

               a.     Fred Meyer's References To Investigative Consumer
Reports Are Permissible. ...............................................14

          b.      The Remaining Sections of Fred Meyer's Disclosure
Are Sufficiently Related To The Purpose Of
The FCRA And Enhance Rather Than Detract From
The Disclosure...............................................................18

    C.     The Information Contained In Plaintiff-Appellant's 15 U.S.C.
§ 1681b(b)(2)(A)(ii) Form  Has No Effect On Whether Fred Meyer
Provided Plaintiff-Appellant A Permissible § 1681b(b)(2)(A)(i)
Disclosure..........................................................................22

II.    THE DISTRICT COURT CORRECTLY CONCLUDED THAT
FRED MEYER'S PRE-ADVERSE ACTION NOTICE DID NOT
VIOLATE § 1681b(b)(3)(A)...............................................24

    A.     The FCRA's Statutory Text Does Not Require Fred Meyer
To Provide Notice Of Applicants'/Employees' Ability To Directly
Discuss or Contextualize Information In A Consumer Report..........27

    B.     Fred Meyer's Review Process Provided Plaintiff-Appellant
With A Legally Sufficient Opportunity To Change The
Company's Mind...............................................................29

          i.      Basic Agency Principles Undercut Plaintiff-Appellant's
Argument That Directing Him To Dispute/Discuss His
Consumer Report With GIS Violated The FCRA...................30

          ii.     Information Received By GIS Through The Pre-Adverse
Action Process Is Shared With Fred Meyer. ...........................32

          iii.    Plaintiff-Appellant Was Not Barred From Contacting
Fred Meyer About His Consumer Report And He Actually
Contacted The Company Regarding His Report. ....................34

    C.     By Enacting The FCRA, Congress Did Not Intend To Provide
Applicants/Employees An Opportunity To Discuss Accurate,
Negative Information With Their Employers. ...................36

iii

i. The FTC Staff Opinions Cited By Plaintiff-Appellant Lack Precedential Value And Do Not Create Substantive Requirements Under The Law. ...................................................39

ii. Judicial Opinions Relied Upon By Plaintiff-Appellant Are Non-Binding And Do Not Prohibit Fred Meyer's Referral Of Consumers To GIS. ...........................................................42

D. Even If The Court Determines Fred Meyer Was Required To Discuss Accurate Information Contained In His Consumer Report, Plaintiff-Appellant's Claim Was Properly Dismissed Because He Did Not Attempt To Engage Fred Meyer Until After The Adverse Employment Decision Had Been Made. ..............................................47

CONCLUSION ......................................................................50

STATEMENT OF RELATED CASES ..................................................52

CERTIFICATE OF COMPLIANCE .....................................................53

# TABLE OF AUTHORITIES

## Cases

*Brown v. Lowe's Cos., Inc.*,
  52 F. Supp. 3d 749 (W.D. N.C. 2014)................................................................43

*Burghy v. Dayton Racquet Club, Inc.*,
  695 F. Supp. 2d 689 (S.D. Ohio 2010)............................................................14

*Case v. Hertz Corp.*,
  2016 WL 1169197 (C.D. Cal. Feb. 26, 2016) ....................................................12

*Clegg v. Cult Awareness Network*,
  18 F.3d 752 (9th Cir. 1994) ................................................................................4

*Coleman v. Kohl's Dept. Stores*,
  2015 U.S. Dist. LEXIS 135746 (N.D. Cal. Oct. 5, 2015) ...........................11, 24

*Cunha v. IntelliCheck, LLC*,
  254 F. Supp. 3d 1124 (N.D. Cal. 2017)............................................................12

*Dawson v. Wonderful Pistachios & Almonds, LLC*,
  2018 U.S. Dist. LEXIS 71339 (C.D. Cal. Apr. 27, 2018)....................13, 15, 21

*Dunford v. Am Databank, LLC*,
  64 F. Supp. 3d 1378 (N.D. Cal. 2014)..............................................................12

*Enesco Corp. v. Price/Costco Inc.*,
  146 F.3d 1083 (9th Cir. 1998) .............................................................................4

*Goldberg v. Uber Techs. Inc.*,
  2015 U.S. Dist. LEXIS 44675 (D. Mass. Apr. 6, 2015)....................................11

*Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
  848 F. Supp. 2d 532 (E.D. Pa. 2012)....................................................30, 42, 43

*Harris v. Home Depot U.S.A., Inc.*,
  114 F. Supp. 3d 868 (N.D. Cal. 2015)..............................................................12

v

*Kelchner v. Sycamore Manor Health Ctr.*,
 305 F. Supp. 2d 429 (M.D. Pa. 2004)...................................................................11

*Lagos v. Leland Stanford Junior Univ.*,
 2015 WL 7878129 (N.D. Cal. Dec. 4, 2015) ..................................................8. 13

*Magallon v. Robert Half Int'l, Inc.*,
 311 F.R.D. 625 (D. Or. 2015).........................................................42, 43, 49

*Meza v. Verizon Communs., Inc.*,
 2016 WL 4721475 (E.D. Cal. 2016) ...................................................................12

*Milbourne v. JRK Residential Am., LLC*,
 2016 U.S. Dist. LEXIS 33608 (E.D. Va., 2016) ...............................................11

*Mix v. Asurion Ins. Servs.*,
 2016 U.S. Dist. LEXIS 172874 (D. Ariz. Dec. 14, 2016)...........................44, 45

*Myers v. Bennett L. Offices*,
 238 F.3d 1068 (9th Cir. 2001) ...........................................................................30

*Reardon v. ClosetMaid Corp.*,
 2013 U.S. Dist. LEXIS 169821 (W.D. Pa. Dec. 2, 2013) ..................................11

*Reed v. CRST Van Expedited, Inc.*,
 2017 U.S. Dist. LEXIS 192668 (M.D. Fla. Nov. 20, 2017).............................13

*Reid v. Kroger Co.*,
 2018 U.S. Dist. LEXIS 42400 (S.D. Ohio Mar. 15, 2018) .........................28, 29

*Safeco Ins. Co. of Am. v. Burr*,
 551 U.S. 47 (2007)......................................................................................36, 37

*Salyers v. Metro. Life Ins. Co.*,
 871 F.3d 934 (9th Cir. 2017) .............................................................................31

*Syed v. M-I, LLC*,
 853 F.3d 492 (9th Cir. 2017) ...................................................................*passim*

*Thomas v. FTS USA, LLC*,
    193 F. Supp. 3d 623 (E.D. Va. 2016) ...........................................................44, 45

*Wilson v. Lynch*,
    835 F.3d 1083 (9th Cir. 2016), *cert. denied sub nom* ...........................................4

**Statutes**

15 U.S.C. § 1681a(1) ...........................................................................................19

15 U.S.C. § 1681b(b)(2)(A)(i) ...........................................................................*passim*

15 U.S.C. § 1681b(b)(2)(A)(ii) ..........................................................................*passim*

15 U.S.C. § 1681b(b)(3)(A) ...............................................................................*passim*

15 U.S.C. § 1681d(b) ...........................................................................................16

Consumer Credit Reporting Reform Act of 1996 ............................................11, 37

**Other Authorities**

40 Years of Experience With The Fair Credit Reporting Act,
    an FTC Staff Report with Summary of Interpretations ................................17, 19

*FTC Advisory Opinion to Allan* (Feb. 14, 2000) ......................................................31

*FTC Advisory Opinion to Coffey* (Feb. 2, 1998) ................................7, 8, 38, 41, 42

*FTC Advisory Opinion to Lewis* (June 11, 1998) .......................................39, 41, 42

*FTC Advisory Opinion to Rosen* (June 9, 1998)......................................................31

*FTC Advisory Opinion to Willner* (Mar. 25, 1999) .................................................15

*FTC, Opinion Letter*, 1997 WL 33791227 (Oct. 21, 1997) ...................................40

*FTC, Opinion Letter*, 1998 WL 34323748 (Feb. 11, 1998) ...................................40

*FTC, Opinion Letter*, 1998 WL 34323756 (June 12, 1998)...................................40

## ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court properly dismissed Plaintiff-Appellant's claim for violation of 15 U.S.C. § 1681b(b)(2)(A)(i)'s disclosure requirement?

2.      Whether the District Court properly dismissed Plaintiff-Appellant's claim for violation of 15 U.S.C. § 1681b(b)(3)(A)'s pre-adverse action notice requirement?

## SUMMARY OF THE ARGUMENT

I.      The District Court appropriately dismissed Plaintiff-Appellant's 15 U.S.C. § 1681b(b)(2)(A)(i) cause of action. The language included in Appellee Fred Meyer Inc.'s ("Fred Meyer" or "Company") disclosure form complied with the requirements of § 1681b(b)(2)(A)(i) because all information contained in the Company's form was "closely related to the FCRA disclosure" and did not distract or otherwise overshadow the disclosure as a matter of law.

Federal Trade Commission ("FTC") administrative guidance and relevant case law in this Circuit hold that additional information beyond the disclosure may be included in an FCRA disclosure so long as it does not overwhelm or distract the consumer from the necessary disclosure. The District Court appropriately considered the statutory language and correctly applied the aforementioned precedent to dismiss Plaintiff-Appellant's cause of action. The Court appropriately

1

held that the information contained in Fred Meyer's disclosure, to the extent it was extraneous, furthered the essential purpose of § 1681b(b)(2)(A)(i)'s disclosure requirement.

Furthermore, the District Court properly rejected Plaintiff-Appellant's claim that Fred Meyer's standalone § 1681b(b)(2)(A)(ii) authorization form served to obscure the content of its FCRA disclosure in light of the fact that no authority has ever found that use of a separate, standalone § 1681b(b)(2)(A)(ii) form creates a § 1681b(b)(2)(A)(i) violation. For these reasons and those developed more fully below, the District Court's dismissal of Plaintiff-Appellant's § 1681b(b)(2)(A)(i) claim should be affirmed.

II.     The District Court correctly dismissed Plaintiff-Appellant's 15 U.S.C. § 1681b(b)(3)(A) cause of action. The propriety of Fred Meyer's use of its agent, General Information Services, Inc. ("GIS"), to field consumer concerns relative to the "accuracy or completeness of any information contained in the [consumer] reports" is supported by the plain statutory language, Congressional intent for enacting the FCRA, FTC advisory opinions, case law in this Circuit, and standard industry practice. The District Court properly dismissed Plaintiff-Appellant's § 1681b(b)(3)(A) claim because Fred Meyer's referral to GIS did not foreclose his opportunity to convey information to Fred Meyer, an opportunity

Plaintiff-Appellant failed to utilize before the Company made the adverse action decision.

Plaintiff-Appellant certainly understood how to convey information to Fred Meyer because he contacted the Company after Fred Meyer made the decision to rescind his conditional offer of employment. Moreover, because Plaintiff-Appellant acknowledges that Fred Meyer and GIS communicate regarding the pre-adverse action process and disputes, his claim that Fred Meyer's use of an agent runs afoul of § 1681b(b)(3)(A) requirements is without merit.

It is undisputed that Plaintiff-Appellant did, in fact, directly contact Fred Meyer regarding his consumer report, albeit after receiving his pre-adverse and adverse action notices. The bottom line is that Plaintiff-Appellant simply disagrees with Fred Meyer's decision not to hire him. While it is understandable for Plaintiff-Appellant to be dissatisfied with Fred Meyer's decision, his dissatisfaction with the Company's decision does not warrant an FCRA claim against the Company.

Accordingly, for these reasons and the reasons developed more fully below, the District Court's dismissal of Plaintiff-Appellant's § 1681b(b)(3)(A) claim should be affirmed.

3

## STANDARD OF REVIEW

A dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is reviewed *de novo*. *Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th Cir. 2016), *cert. denied sub nom*. Review is limited to the contents of the complaint. *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Id*. The Court need not accept as true, however, allegations that contradict judicially noticeable facts, or conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994).

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY CONCLUDED THAT FRED MEYER'S § 1681b(b)(2)(A)(i) DISCLOSURE DID NOT VIOLATE THE FCRA AS A MATTER OF LAW.

Magistrate Judge You and Judge Simon both evaluated Fred Meyer's § 1681b(b)(2)(A)(i) disclosure and appropriately held that it did not violate the statutory text of the FCRA and/or case law from this Circuit interpreting the same. (ER 3)(ER14). Specifically, the disclosure provided to Plaintiff-Appellant and reviewed by the District Court states as follows:

> We ([t]he Kroger family of companies) will obtain one or more consumer reports or investigative consumer reports (or both) about

4

you for employment purposes. These purposes may include hiring, contract, assignment, promotion, reassignment, and termination. The reports will include information about your character, general reputation, personal characteristics, and mode of living.

We will obtain these reports through a consumer reporting agency. The consumer reporting agency is General Information Services, Inc. GIS's address is P.O. Box 353, Chapin, SC 29036. GIS's telephone number is (866) 265-4917. GIS's website is at www.geninfo.com.

To prepare the reports, GIS may investigate your education, work history, professional licenses and credentials, references, address history, social security number validity, right to work, criminal record, lawsuits, driving record and any other information with public or private information sources.

You may inspect GIS's files about you (in person, by mail, or by phone) by providing identification to GIS. If you do, GIS will provide you help to understand the files, including communication with trained personnel and an explanation of any codes. Another person may accompany you by providing identification.

If GIS obtains any information by interview, you have the right to obtain a complete and accurate disclosure of the scope and nature of the investigation performed.

(ER 7).

Because all of the information contained in the foregoing disclosure

(i) served to advance the purposes of the FCRA and inform Plaintiff-Appellant of

his rights under the law, and (ii) because none of the information contained therein

constitutes the type of "extraneous information" barred by courts in this Circuit,

the District Court properly dismissed Plaintiff-Appellant's § 1681b(b)(2)(A)(i)

claim as a matter of law. For these reasons and further because the District Court's

5

decision was rooted in sound legal analysis of the law and precedent as well as an evaluation of the uncontroverted facts of this case, the Court should affirm the dismissal.

### A.    Plaintiff-Appellant's Argument That § 1681b(b)(2)(A)(i) Forbids The Inclusion Of *Any* Extraneous Language In The Disclosure Is Unavailing.

Plaintiff-Appellant argues that the text of § 1681b(b)(2)(A)(i) prohibits a disclosure from containing any information beyond express disclosure language. He further argues that "any extraneous information, save for the authorization [expressly permitted by 15 U.S.C. § 1681b(b)(2)(A)(ii)], contained in Fred Meyer's disclosure form violates the FCRA." (ECF No. 10, at 27). This interpretation of the statute is neither supported by any FTC advisory opinion nor by prevailing case law in this Circuit or beyond. Accordingly, Plaintiff-Appellant's argument lacks merit and should be discounted.

Section 1681b(b) governs the requirements an employer must satisfy to legally acquire a consumer report in the employment context:

> (2)    Disclosure to consumer.
>
> > (A)  In general. Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--
> >
> > > (i)      a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is

6

procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii)    the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2).

Plaintiff-Appellant argues that § 1681b(b)(2)(A)(i)'s requirement that the disclosure "consist[] solely of the disclosure" must be read as an absolute prohibition to the inclusion of any other language in the disclosure, short of the consumer authorization described in 15 U.S.C. § 1681b(b)(2)(A)(ii).  However, Plaintiff-Appellant's narrow interpretation of the Act contravenes the overwhelming weight of federal case law and FTC advisory opinions discussing this issue.

With respect to the FTC, the Commission's staff has previously considered whether the term "solely" equals "exclusive" in the context of the FCRA.  The FTC's staff attorneys answered that question in the negative in *FTC Advisory Opinion to Coffey* (Feb. 2, 1998).  There, the FTC's staff opined that a valid § 1681b(b)(2)(A)(ii) disclosure may contain additional information so long as that information advances the goals of the Act and does not "encumber," (i.e., inhibit, hamper, or obstruct) the overall disclosure:

7

> You also ask what information may appear on the [FCRA disclosure] and if "the FTC is suggesting that the document be of a certain size." It is our view that Congress intended that the disclosure not be encumbered with extraneous information. However, some additional information, such as a brief description of the nature of the consumer reports covered by the disclosure, may be included if the information does not confuse the consumer or detract from the mandated disclosure. We suggest no size requirement for the disclosure; a document that meets the "clear and conspicuous" standard set by the FCRA will be acceptable.

*FTC Advisory Opinion to Coffey* (Feb. 2, 1998).

Following *FTC Advisory Opinion to Coffey*, the overwhelming majority of district courts in this Circuit have similarly found that additional language advancing the goals of the FCRA may be present in a legally compliant § 1681b(b)(2)(A)(i) disclosure.

Relying on a multitude of cases within this Circuit, Magistrate Judge You's Findings and Recommendations appropriately held that consistent with §1681b(b)(2)(A)(i), an employer may include limited additional information within its disclosure so long as that information is "closely related to the FCRA disclosure" and serves to "focus an applicant's attention on the FCRA disclosure." (ER 21)(citing *Lagos v. Leland Stanford Junior Univ.*, 2015 WL 7878129, at *2 (N.D. Cal. Dec. 4, 2015); *Feist v. Petco Animal Supplies, Inc.*, 218 F. Supp. 3d 1112, 1115 (S.D. Cal. 2016)(noting that some additional information can be included in the disclosure); *Shelton v. Hal Hays Constr., Inc.*, 2016 WL 8904414,

8

at *3 (C.D. Cal. July 29, 2016)(noting that the term "solely" may not be as strictly construed as the plaintiff urges)).

In asking this Court to overturn the overwhelming weight of the judicial opinions in this Circuit, Plaintiff-Appellant relies exclusively on this Court's 2017 opinion *Syed v. M-I, LLC*, 853 F.3d 492, 501 (9th Cir. 2017). A closer inspection of that case, however, reveals that *Syed* actually undercuts his argument rather than supports it.

In *Syed*, this Court held that a liability waiver contained within a consumer disclosure violated § 1681b(b)(2)(A)(i)'s requirement that the disclosure document consist "solely" of the disclosure. However, in so ruling, the Court acknowledged that statutory text can contain implied exceptions, if the exception comports with the statute's purpose: "[a]n implied exception to an express statute *is justifiable* only when it comports with the basic purpose of the statute." *Syed*, 853 F.3d at 501. This general principle has been applied by many courts reviewing § 1681b(b)(2)(A)(i)'s requirements. Relying on the same principle, many courts have held that additional language in an employer's § 1681b(b)(2)(A)(i) disclosure is permissible if the additional language either (i) does not detract from, or (ii) actually enhances the consumer's understanding of the disclosure. *See* Part I.B, *infra*.

9

Based on the foregoing, Plaintiff-Appellant's overly strict reading of the Act's prohibition on additional information is unsupported by the vast body of precedent interpreting the Act. As a result, Judge Simon appropriately followed the weight of legal precedent and refused to equate "solely" with "exclusively." Because applicable case law supports the District Court's legal analysis, this Court should adopt the District Court's analysis, finding that Fred Meyer's disclosure does not violate the FCRA. (ER 19).

**B.     The District Court Properly Analyzed The FCRA's Disclosure Requirements And Correctly Determined Fred Meyer's § 1681b(b)(2)(A)(i) Disclosure Was Compliant As A Matter Of Law.**

Plaintiff-Appellant argues that even if § 1681b(b)(2)(A)(i) authorizes the inclusion of additional information beyond the mere disclosure, Fred Meyer's disclosure contained too much extraneous information such that it "confused" Plaintiff-Appellant thereby violating the FCRA. (ECF No. 10, at 34–41). Judge Simon properly rejected this argument and appropriately granted Fred Meyer's motion to dismiss.

### i.     *The District Court Appropriately Dismissed Plaintiff-Appellant's § 1681b(b)(2)(A)(i) Claim As A Matter Of Law.*

As an initial matter, to the extent that Plaintiff-Appellant asserts that the issue of his confusion is a matter of fact necessitating a jury determination, he is

incorrect: "Many courts have decided the adequacy of § 1681b(b)(2)(A)

disclosures as a matter of law without devoting any discussion to the issue of

clarity." *Milbourne v. JRK Residential Am., LLC*, 2016 U.S. Dist. LEXIS 33608,

*20 (E.D. Va., 2016).

Courts reviewing the question of whether an FCRA disclosure is valid under

the Act have consistently ruled on the validity of the disclosure based on the text of

the disclosure as a matter of law, as opposed to relying on the plaintiff's individual

perception. *See*, *e.g.*, *Coleman v. Kohl's Dept. Stores*, 2015 U.S. Dist. LEXIS

135746 (N.D. Cal. Oct. 5, 2015); *Goldberg v. Uber Techs. Inc.*, 2015 U.S. Dist.

LEXIS 44675 (D. Mass. Apr. 6, 2015); *Reardon v. ClosetMaid Corp.*, 2013 U.S.

Dist. LEXIS 169821 (W.D. Pa. Dec. 2, 2013); *Kelchner v. Sycamore Manor

Health Ctr.*, 305 F. Supp. 2d 429 (M.D. Pa. 2004). In cases alleging that an FCRA

disclosure form violated § 1681b(b)(2)(A)(i), the central question is appropriately

determined by the presiding court as a matter of law.

> ii.     ***The District Court Correctly Held That Fred Meyer's
>          § 1681b(b)(2)(A)(i) Disclosure Did Not Contain Any
>          Impermissible Extraneous Information.***

Congress amended the FCRA in 1996 via the Consumer Credit Reporting

Reform Act of 1996 to include the requirement presently embodied in 15 U.S.C.

§ 1681b(b)(2)(A)(i). *Pub. L*. 104-208, § 2403. Over the past twenty-two (22) years,

11

numerous district courts in this Circuit and beyond have shaped the contours of this area of the law, deciding on a case-by-case basis what types of information constitute permissible additions that support the FCRA's basic purpose (*See* Section II *infra*) versus those that frustrate the purpose of the Act.

As Magistrate Judge You appropriately held and Judge Simon agreed, courts in this Circuit and around the country have identified numerous types of information that render the document in violation of the FCRA. Specifically, Magistrate Judge You's Findings and Recommendations recognized numerous categories of information previously found to be impermissible by Courts in this Circuit, if included in an employer's § 1681b(b)(2)(A)(i) disclosure. Based on the case law, impermissible information includes:

- Liability Waivers. *See Syed v. M-I, LLC*, 853 F. 3d 492, 502 (9th Cir. 2017); *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1130 (N.D. Cal. 2017); *Harris v. Home Depot U.S.A., Inc*., 114 F. Supp. 3d 868, 870 (N.D. Cal. 2015); *Dunford v. Am Databank, LLC*, 64 F. Supp. 3d 1378, 1388 (N.D. Cal. 2014);

- Averments that employment decisions are based on legitimate non-discriminatory reasons. *See Case v. Hertz Corp*., 2016 WL 1169197, at *5 (C.D. Cal. Feb. 26, 2016);

- Authorizations to release consumer reports to third parties. *See Meza v. Verizon Communs., Inc.*, 2016 WL 4721475, at *2 (E.D. Cal. 2016); and

12

- State law disclosures. *See Lagos v. Leland Stanford Junior Univ.*, 2015 WL 7878129, at *2 (N.D. Cal. Dec. 4, 2015).

In reaction to her analysis of existing legal precedent in this Circuit, and in an effort to bolster his § 1681b(b)(2)(A)(i) claim, Plaintiff-Appellant erroneously claims Magistrate Judge You misinterpreted the foregoing examples "as an exhaustive list of provisions that may violate the Act." (ECF No. 10, at 32). However, while Magistrate Judge You's Findings and Recommendations noted that "[t]he Fred Meyer Disclosure contains none of the [foregoing] prohibitions," (ER 21), contrary to Plaintiff-Appellant's assertions, she did not end her analysis after considering prior precedent alone.

Rather, Magistrate Judge You proceeded to analyze the content of Fred Meyer's specific disclosure and ultimately determined that "[Fred Meyer's] Disclosure is limited to information that is 'closely related to the FCRA disclosure.'" (ER 22). Put another way, Magistrate Judge You determined that the information contained in Fred Meyer's disclosure had previously been deemed acceptable by numerous courts around the country. (ER 22 (citing *Lagos*, 2015 WL 7878129, at *2)); *See also Dawson v. Wonderful Pistachios & Almonds, LLC*, 2018 U.S. Dist. LEXIS 71339 (C.D. Cal. Apr. 27, 2018); *Reed v. CRST Van Expedited, Inc*., 2017 U.S. Dist. LEXIS 192668, at *8 (M.D. Fla. Nov. 20, 2017)

13

(granting motion to dismiss; "Plaintiff fails to make any argument or cite any case law supporting his position that Defendant's disclosure document does not qualify as a clear and conspicuous disclosure . . . because it provides some additional information relating to the consumer report."); *Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 699–700 (S.D. Ohio 2010) ("explanatory language" is permissible; that the document is less than a page tends to refute any contention that it was not a "conspicuous disclosure").

Ultimately, Magistrate Judge You's Findings and Recommendations (and the District Court's subsequent adoption of the same) were well-reasoned and in keeping with relevant authority. This inescapable conclusion is supported by the following examination of the language of Fred Meyer's disclosure and Plaintiff-Appellant's objections.

### a. Fred Meyer's References To Investigative Consumer Reports Are Permissible.

Plaintiff-Appellant's main objection to Fred Meyer's disclosure is that it includes basic information disclosing that the Company could obtain investigative consumer reports in addition to Plaintiff-Appellant's consumer report. Plaintiff-Appellant takes issue with the fact that the first paragraph of the disclosure allegedly "wraps the two unique reports into one plural designation" and "does not

14

make any distinction between the two and does not alert employees as to which it refers." (ECF No. 10, at 38).

Magistrate Judge You and Judge Simon considered this argument and properly rejected it. As an initial matter, both the FTC staff and courts reviewing the Act have held that the inclusion of language regarding investigative reports is permissible within an FCRA disclosure. *See, e.g.*, *FTC Advisory Opinion to Willner* (March 25, 1999); *see also Dawson v. Wonderful Pistachios & Almonds, LLC*, 2018 U.S. Dist. LEXIS 71339 (C.D. Cal. Apr. 27, 2018).

In *Willner* the FTC staff made clear that "limited verbiage" disclosing that an employer may pursue an investigative consumer report in addition to a consumer report would in fact *enhance* the disclosure required by 15 U.S.C. § 1681b(b)(2)(A)(i), while at the same time warning that "a Section 606(b) notice *setting forth the nature and scope of the investigation* would of necessity be much more detailed and would likely be held to overshadow 604(b) disclosure in violation of 604(b)(2)(A)." *Id.* (Emphasis added.)

Plaintiff-Appellant cites *Willner* in support of his argument that Fred Meyer's inclusion of limited information regarding investigative consumer reports in its disclosure constitutes an impermissible description of the "nature and scope"

15

of an investigation.  It does not. Fred Meyer's disclosure only provides two brief

references to investigative consumer reports:

> "We ([t]he Kroger family of companies) will obtain one or more
> consumer reports or investigative consumer reports (or both) about
> you for employment purposes."

> and;

> "If GIS obtains any information by interview, you have the right to
> obtain a complete and accurate disclosure of the scope and nature of
> the investigation performed."

(ER 07).

Fred Meyer's disclosure does not contain a description of the "nature and

scope" of an investigative consumer report.  This is obvious for two separate and

distinct reasons.  First, Fred Meyer's disclosure informs the consumer that *in the*

*event* it obtains an "investigative consumer report," it will disclose the nature and

scope of that investigation. Given that Fred Meyer's disclosure informs the

consumer that information regarding the "nature and scope" of the investigation

will be forthcoming in the event an investigative consumer report is obtained

(i.e., it has not happened yet), it is illogical to assert that its § 1681b(b)(2)(A)(i)

disclosure impermissibly describes the "nature and scope" of the investigative

consumer report.

Secondly, 15 U.S.C. § 1681d(b) requires the preparer of an investigative

consumer report to produce a disclosure of the "nature and scope" of any

16

investigation upon request; legally compliant §1681d disclosures often contain large amounts of information, including questionnaires, interviewee descriptions, information regarding the investigating entity, and additional forms. *See* 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, AN FTC STAFF REPORT WITH SUMMARY OF INTERPRETATIONS, at 64, *available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf (last visited Jan. 20, 2019) (explaining that to legally comply with a §1681d inquiry regarding the "nature and scope" of an investigation, the employer must provide the consumer with "a complete and accurate description of the types of questions asked, the types of persons interviewed, and the name and address of the investigating agency" and that providing a consumer a blank copy of the form used to transmit the report from the consumer reporting agency to the user would be an example of how to appropriately describe the "nature and scope" of the investigation).

Fred Meyer's consumer report disclosure contains none of the information an employer is required to provide regarding the "nature and scope" of a §1681d investigation, namely: (1) questionnaires; (2) interviewee descriptions; (3) information regarding the investigating entity; or (4) additional investigatory

forms. (ER 30). Rather, Fred Meyer's disclosure is a standard consumer report disclosure that appropriately informs applicants that an investigative consumer report *may* also be obtained. For these reasons, Plaintiff-Appellant's main point of contention lacks merit.

> **b.      The Remaining Sections of Fred Meyer's Disclosure Are Sufficiently Related To The Purpose Of The FCRA And Enhance Rather Than Detract From The Disclosure.**

Plaintiff-Appellant further argues that other portions of Fred Meyer's single-page disclosure detract from the disclosure to such a degree as to render it non-compliant with § 1681b(b)(2)(A)(i). However, a point-by-point examination of Plaintiff-Appellant's arguments demonstrates they lack merit.

The first paragraph of Fred Meyer's disclosure explains that any consumer reports obtained by the Company "will include information about your character, general reputation, personal characteristics, and mode of living." Plaintiff-Appellant alleges these words describe "the heart of an investigative report." (ECF No. 10, at 37). However, these words are taken directly from the statutory definition of "consumer report" in the FCRA:

> (1) In general. The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness [creditworthiness], credit standing, credit capacity, ***character, general reputation, personal characteristics, or mode of living*** which is used or expected

18

Case: 18-35592, 01/28/2019, ID: 11170272, DktEntry: 19, Page 27 of 61

to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—

(A)    credit or insurance to be used primarily for personal, family, or household purposes;

(B)    employment purposes; or

(C)    any other purpose authorized under section 604 [15 U.S.C. § 1681b].

15 U.S.C. § 1681a(1) (emphasis added).

In light of the clear language of the statute, Plaintiff-Appellant's argument that the first paragraph of Fred Meyer's disclosure improperly discusses details relating to *investigative* consumer reports as opposed to consumer reports is without merit.

Plaintiff-Appellant's complaint regarding the disclosure's third paragraph travels even further afield. Specifically, he claims that the disclosure's third paragraph offers "a detailed description of the nature and scope of GIS's investigation." (ECF No. 10, at 37). As previously discussed, the language contained in the third paragraph is not a detailed description of the "nature and scope" as it only generally describes what categories of information may be obtained in a consumer report. *See* 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, AN FTC STAFF REPORT WITH SUMMARY OF INTERPRETATIONS, *supra*.

19

The information in the third paragraph aids in the general purpose of a disclosure, namely identifying the type of information Fred Meyer intends to review, which allows him to decide whether he wants to provide the Company authority to obtain his consumer report. *See Syed* at 502 (holding that one goal of Congress in enacting FCRA was to guard a job applicant's right to control the dissemination of sensitive personal information by either authorizing or withholding authorization for an employer to obtain a consumer report).

Furthermore, Plaintiff-Appellant outlandishly claims the third paragraph of the disclosure "cannot plausibly be interpreted as describing a consumer report, as it broadly provides for the investigation and interview of references, friends, neighbors, and associates—the nature and scope of an investigative report." (ECF No. 10, at 38-39). However, this statement finds no support in the actual text of the third paragraph of Fred Meyer's disclosure and requires extreme extrapolation. The text of the third paragraph is as follows:

> To prepare the reports, GIS may investigate your education, work history, professional licenses and credentials, references, address history, social security number validity, right to work, criminal record, lawsuits, driving record and any other information with public or private information sources.

(ER 7).

The actual text of the disclosure is a simple, short paragraph explaining the sources that may be investigated by the Company. Specifically, there are no references to interviews of "references, friends, neighbors and associates" as Plaintiff-Appellant suggests on appeal.

Plaintiff-Appellant further argues that the fourth paragraph of Fred Meyer's disclosure, which explains the recipient's rights to inspect files obtained by GIS "serves only to further pull the employee's attention away from the required disclosure and their privacy rights protected by the FCRA." (ECF No. 10, at 39). However, this paragraph does not "pull the employee's attention away" from his rights–it in fact does the exact opposite, notifying Plaintiff-Appellant of his rights/protections under the statute.

That Plaintiff-Appellant condemns Fred Meyer's disclosure because the Company informs him of his right to inspect his consumer report and/or receive detailed information regarding how it was compiled is patently unreasonable. Federal Courts in this Circuit agree. *See, e.g.*, *Dawson v. Wonderful Pistachios & Almonds, LLC*, 2018 U.S. Dist. LEXIS 71339 (C.D. Cal. Apr. 27, 2018)(finding provisions disclosing an applicant's right to inspect consumer reports were compatible with a § 1681b(b)(2)(A)(i)–compliant disclosure).

Finally, while Plaintiff-Appellant's brief finds no fault with the fifth paragraph of Fred Meyer's disclosure *per se*, he argues that it should be viewed "in aggregation" with other allegedly improper paragraphs of the disclosure. (ECF No. 10, at 39). As explained above, none of the other paragraphs actually detract from Fred Meyer's § 1681b(b)(2)(A)(i) disclosure, and thus Plaintiff-Appellant's argument relative to the fifth is unavailing.

In sum, none of Plaintiff-Appellant's arguments regarding the distracting nature of Fred Meyer's consumer report disclosure have merit. Fred Meyer's disclosure is concise and all information contained within serves the FCRA's objective of protecting individuals whose backgrounds are investigated for employment purposes. Accordingly, Judge Simon's opinion dismissing Plaintiff-Appellant's § 1681b(b)(2)(A)(i) claim should be affirmed consistent with the arguments described herein.

**C.    The Information Contained In Plaintiff-Appellant's
15 U.S.C. § 1681b(b)(2)(A)(ii) Form  Has No Effect On
Whether Fred Meyer Provided Plaintiff-Appellant A
Permissible § 1681b(b)(2)(A)(i) Disclosure.**

Plaintiff-Appellant next argues that Fred Meyer's Authorization form (ER 31), a stand-alone document provided to Plaintiff-Appellant separately from Fred Meyer's disclosure somehow violated the Company's legal obligation under § 1681b(b)(2)(A)(i) because the forms must be read as one document.  Despite

22

Plaintiff-Appellant's arguments on appeal, Judge Simon correctly held that the case law did not support Plaintiff-Appellant's position.

The FCRA explicitly permits an employer to include an FCRA authorization provision in the same form as the FCRA disclosure. 15 U.S.C. § 1681b(b)(2)(A)(ii). However, doing so is not a requirement and Fred Meyer has elected to provide an FCRA authorization form in separate, stand-alone form. (ER 31). Plaintiff-Appellant even admits that the disclosure and authorization are separate, distinguishable forms. (ECF No. 10, at 42) ("Fred Meyer provided Walker with a separate authorization form, which immediately followed his disclosure form.").

Unlike § 1681b(b)(2)(A)(i), § 1681b(b)(2)(A)(ii) does not impose any limitation on the inclusion of extraneous information—a fact Plaintiff-Appellant acknowledges. (ECF No. 10, at 30). Despite this, Plaintiff-Appellant argues that allegedly extraneous information contained in the authorization form should somehow operate to invalidate Fred Meyer's disclosure form because "Fred Meyer's forms worked together to obscure their purpose and deprive [Plaintiff-Appellant] of conspicuous notice of his rights under the FCRA." (ECF No. 10, at 44).

23

Plaintiff-Appellant correctly states that both forms are necessary to fulfill the requirements of the FCRA (whether presented separately or together), but presents no precedent for any situation where an otherwise compliant disclosure form was rendered noncompliant by language in a separate authorization form. This is likely because there is no precedent to be had. In contrast, *Coleman v. Kohl's Dep't Stores, Inc.*, 2015 U.S. Dist. LEXIS 135746 (N.D. Cal. Oct. 5, 2015) has considered the issue and found that merely presenting documents together does not violate § 1681b(b)(2)(A)(i).

Simply put, there is no basis to invalidate Fred Meyer's otherwise valid disclosure. Accordingly, the District Court's ruling dismissing Plaintiff's claims should be affirmed.

## II. THE DISTRICT COURT CORRECTLY CONCLUDED THAT FRED MEYER'S PRE-ADVERSE ACTION NOTICE DID NOT VIOLATE § 1681b(b)(3)(A).

The District Court appropriately dismissed Plaintiff-Appellant's § 1681b(b)(3)(A) claim. Judges Simon and You correctly held that Plaintiff-Appellant failed to cite any statutory provision or persuasive case law suggesting that Fred Meyer's § 1681b(b)(3)(A) notice was legally deficient because it failed to explicitly inform Plaintiff-Appellant that he could contact the Company to either dispute inaccurate information or discuss accurate yet negative items contained in

24

his consumer report. (ER 12-13). Simply put, Magistrate Judge You and Judge Simon correctly concluded that Fred Meyer did not violate the FCRA by contracting with an agent, GIS, to assist in administering its pre-adverse action process.

Plaintiff-Appellant's arguments to this Court fail for the same reasons they failed at the District Court level. Here again, Plaintiff-Appellant fails to identify any statutory provision requiring Fred Meyer to notify Plaintiff-Appellant via its § 1681b(b)(3)(A) communication that he could contact the Company directly to either dispute the content of his consumer report or discuss/contextualize any accurate yet negative information therein. Likewise, Plaintiff-Appellant fails to provide any persuasive legal authority holding that Fred Meyer's use of a third party to assist in administering the pre-adverse action process violates the law. For these reasons alone, the Court should uphold dismissal of his § 1681b(b)(3)(A).

On appeal, Plaintiff-Appellant begs this Court to look beyond the statutory text and create additional requirements where Congress declined to create them. To further this objective, Plaintiff-Appellant colorfully relies on Orwellian images of "unthinking machines" and "impersonal blips" in discussing Congressional "fear" of everyday life absent the protections of the FCRA. (Dkt. 10, at 52). However, hyperbole aside, those fanciful notions simply mask the fact that

25

Plaintiff-Appellant's legal arguments are rooted exclusively in (i) non-binding FTC staff opinions and (ii) citations to judicial decisions that are either outside of this Circuit or do not stand for the proposition for which they are cited.

In contrast to the "authority" upon which Plaintiff-Appellant relies on appeal, this Court recently identified and discussed the numerous problems Congress meant to address by enacting the FCRA in *Syed v. M-I, LLC,* 853 F.3d 492 (9th Cir. 2017). Notably, none of the issues Congress sought to address in enacting §1681b(b) involve creating consumers' rights to explain accurately reported information with a potential employer. Furthermore, based on the Congressional intent underpinning § 1681b(b), there is no indication Congress would object to the use of sophisticated third-party agents such as GIS to further consumers' ability to dispute and correct inaccurately reported consumer information. In fact, *Syed*'s discussion of Congressional intent requires the opposite conclusion.

Because this Court has previously addressed the FCRA's Congressional intent and the obligations Plaintiff-Appellant now implores this Court to adopt are unsupported by this Court's categorization of the Congressional intent, Plaintiff-Appellant's § 1681b(b)(3)(A) claim is unavailing.

Finally, even if the Court deems it appropriate to bar Fred Meyer's ability to utilize an agent to manage its pre-adverse action dispute process or imposes an exclusive direct "discussion" or "contextualization" requirement, the Complaint establishes that Plaintiff-Appellant failed to avail himself of the opportunity to either dispute the content of his report or attempt to discuss/contextualize the information prior to receiving the final adverse action notice. In other words, Plaintiff-Appellant failed to take advantage of the very statutory protections that he now seeks to create. For this additional reason, his § 1681b(b)(3)(A) claim was properly dismissed by the District Court.

For these reasons as well as those discussed in the following sections, the District Court correctly dismissed Plaintiff-Appellant's § 1681b(b)(3)(A) claim and this Court should affirm its ruling.

## A. The FCRA's Statutory Text Does Not Require Fred Meyer To Provide Notice Of Applicants'/Employees' Ability To Directly Discuss or Contextualize Information In A Consumer Report.

Judge Simon and Magistrate Judge You correctly found that 15 U.S.C. § 1681b(b)(3)(A) does not contain a statutory provision requiring Fred Meyer to provide Plaintiff notice "that he could contact Defendant directly, or the date by which he must do so." (ER 13). In fact, 15 U.S.C. § 1681b(b)(3)(A), provides as follows:

27

Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—

(i)     a copy of the report; and

(ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

15 U.S.C. § 1681b(b)(3).

Clearly, the statutory text of § 1681b(b)(3) does not create obligations beyond requiring that the Company provide applicants copies of their reports and a summary of rights prior to taking an adverse employment action. Moreover, it does not prohibit the use of an agent to facilitate the pre-adverse action process.

In her Findings and Recommendations, Magistrate Judge You correctly concluded that: "there is no prohibition in the statute or the case law that an employer cannot use an agent to facilitate [the pre-adverse action] process." (ER 25). She then analyzed on an analogous case where the court had considered Kroger's use of GIS as an agent in its pre-adverse action process. *See Reid v. Kroger Co.*, 2018 U.S. Dist. LEXIS 42400 (S.D. Ohio Mar. 15, 2018). Specifically, Magistrate Judge You found *Reid* instructive in reaching the conclusion that the FCRA does not prohibit the use of an agent in the administration of the pre-adverse action process:

28

"A recent factually-analogous decision upheld the use of an agent for the FCRA dispute process. In *Reid v. Kroger Co.*, issued after Fred Meyer's motion to dismiss was taken under advisement, Kroger also partnered with third-party consumer reporting agency GIS. (internal citation omitted). The disclosure was nearly identical to the one presented to Walker in this action. While not binding, the decision of the Southern District of Ohio is instructive. As in this case, the pre-adverse action informed the plaintiff that she had 'the right to dispute the accuracy or completeness of any information contained in the report by contacting GIS directly.' *Reid* at *3. The court upheld this pre-adverse action notice and found that 'the FCRA does not require users of consumer reports, like Kroger, to make individual employees . . . available to assist applicants . . . with their disputes.' *Reid* at *6. Instead, the FCRA only requires employers to provide employees or applicants with copies of the consumer reports and a summary of the FCRA rights. Id. It was undisputed in Reid, as it is in this case, that the employer did so.'"

(ER 25-26).

Based on the foregoing, the District Court correctly held that the statute does not contain any additional requirements and the Court should affirm the dismissal.

## B. Fred Meyer's Review Process Provided Plaintiff-Appellant With A Legally Sufficient Opportunity To Change The Company's Mind.

Despite the lack of statutory requirements, Plaintiff-Appellant alleges that by referring him to GIS, Fred Meyer implicitly denied a "real opportunity to dispute or discuss negative reports and change [Fred Meyer's] mind before adverse action is taken." (ECF No. 10, at 45).

However, logic and applicable law simply do not support this argument because it: (1) ignores basic agency principles; (2) illogically assumes that

29

Fred Meyer and GIS do not communicate regarding information/communications received from consumer-applicants/employees such as Plaintiff-Appellant; and (3) improperly equates Fred Meyer's referral to GIS as a complete bar on discussions with anyone at Fred Meyer regarding the information contained in the consumer report. For these reasons, the Court should uphold the dismissal of Plaintiff-Appellant's § 1681b(b)(3)(A) cause of action.

### i. *Basic Agency Principles Undercut Plaintiff-Appellant's Argument That Directing Him To Dispute/Discuss His Consumer Report With GIS Violated The FCRA.*

The Ninth Circuit has aptly held that common law agency principles apply to actions brought under the auspices of the FCRA. *See Myers v. Bennett L. Offices*, 238 F.3d 1068, 1073 (9th Cir. 2001) (holding that a principal may be liable for a violation of § 1681n by an agent). While this Court has not directly addressed agency principles in the context of § 1681b(b) actions, other federal courts have relied on agency principles in finding that employers are vicariously liable for a violation of § 1681b(b)(3)(A) when an agent fails to fulfill pre-adverse action obligations for which it was hired. *See Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 542 (E.D. Pa. 2012). Moreover, there is no statutory prohibition barring employers from hiring third party agents to fulfill their § 1681b(b) obligations.

30

Similarly, the FTC endorses the delegation of adverse action notification and applicant dispute processing to third party agents as an accepted practice triggering common law agency principles. *See FTC Advisory Opinion to Rosen* (June 9, 1998). In *Rosen*, the FTC staff affirmed that an employer is permitted to hire a consumer reporting agency to "fulfill [its] ministerial obligations under the FCRA," reasoning that the employer is vicariously liable if those duties are not adequately performed. *Id. See also FTC Advisory Opinion to Allan* (Feb. 14, 2000) (clarifying that there is no bar prohibiting a CRA from making employment decisions on behalf of an employer as its agent).

The foregoing opinions demonstrate that employers outsourcing their § 1681b(b)(3) obligations is a widely accepted practice due to the protections of general agency principles. Here, that agency relationship was created when Fred Meyer contracted with GIS to manage its consumer report process, including compliance with § 1681b(b)(3). (ER 7).

Pertinent to the issues on review, an agent's knowledge and conduct are generally imputed to the principal. *See Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 939 (9th Cir. 2017). As such, Plaintiff-Appellant's communications with GIS concerning negative items in his report (assuming he actually timely communicated with GIS—he did not) and the information obtained resulting from

31

such communications, would have been imputed to Fred Meyer. Therefore, because GIS acted as Fred Meyer's agent, Plaintiff-Appellant was indisputably provided the opportunity to constructively discuss his negative reports with Fred Meyer when he discussed it with GIS.

> ### ii. Information Received By GIS Through The Pre-Adverse Action Process Is Shared With Fred Meyer.

If the foregoing were insufficient to eviscerate Plaintiff-Appellant's § 1681b(b)(3)(A) claim, Plaintiff-Appellant's allegations also fail due to his implicit assumption that Fred Meyer does not communicate with its agent GIS—an assumption that has absolutely no basis in fact. The essence of Plaintiff-Appellant's argument regarding the alleged deficiency of Fred Meyer's § 1681b(b)(3)(A) notice is captured in the following excerpt from his opening brief:

> Here, Fred Meyer delegates all discussions of "accuracy or completeness" to GIS. (ER32.) Though a discussion with GIS regarding inaccurate reports may be of use to applicants, explaining their side of the story to GIS for accurate records would be of no avail. As GIS admits, it plays no part in the hiring decisions and cannot provide an explanation for adverse action. (ER33.) In other words, applicants cannot change the mind of Fred Meyer by providing GIS with context or completeness for a negative entry—GIS effectively has no mind to change.

(ECF No. 10, at 51). This argument is specious and unsupported.

32

Plaintiff-Appellant assumes that because GIS does not make the final decision regarding employment, any attempt by consumers to clarify or explain information contained in their consumer reports to GIS is therefore fruitless. That assumption is illogical and requires the Court to accept the implicit notion that Fred Meyer has hired GIS as its agent to manage the consumer dispute process, but does not communicate with GIS regarding its findings/results from that very process.

However, it is uncontroverted that GIS serves as Fred Meyer's agent for purposes of background investigation. GIS collects information and relays it to Fred Meyer, albeit information obtained from consumer reports, investigative consumer reports, or an applicant's dispute regarding information contained in a consumer report. Despite this, Plaintiff-Appellant asserts with no evidence that information conveyed to GIS has no impact on Fred Meyer's decision related to his application.

In fact, Plaintiff-Appellant's argument makes even less sense when considering his admission that "a discussion of inaccurate reports [with GIS] may be of use to applicants." (ECF No. 10, at 51)(emphasis removed). GIS, as pointed out by Plaintiff-Appellant on appeal, does not make any decisions regarding hiring for Fred Meyer; accordingly, corrections to inaccurate consumer reports sent to

33

GIS can only be effective if one recognizes that GIS will then pass along relevant information to Fred Meyer.

Plaintiff-Appellant gives no explanation for why he recognizes that a consumer reporting agency such as GIS acting as agent to an employer can be expected to pass along applicant information regarding *inaccurate* consumer reports, but simultaneously argues that the same consumer reporting agency cannot pass along applicant information regarding *accurate* consumer reports.

> ### iii. *Plaintiff-Appellant Was Not Barred From Contacting Fred Meyer About His Consumer Report And He Actually Contacted The Company Regarding His Report.*

Finally, Plaintiff-Appellant makes yet another unsupported claim when he states that "the only dispute opportunity provided by Fred Meyer is with GIS[.]" (ECF No. 10, at 48). Plaintiff's claim is misleading. Even though, as argued above, Fred Meyer's referral to GIS fulfilled the statutory requirements of § 1681b(b)(3)(A), Fred Meyer's adverse action notice does not foreclose Plaintiff-Appellant from bringing his concerns directly to Fred Meyer if he chose to do so.

Based on the facts as admitted by Plaintiff-Appellant, he only attempted to communicate directly with Fred Meyer sometime *after* he received the adverse action notice. (ER 39). Specifically, he contacted the Human Resources manager of the individual store where he applied. (*Id*). That individual allegedly informed

Plaintiff-Appellant that she was not personally involved in the collection of his consumer report or the decision not to hire Plaintiff and therefore could not help him. (*Id.*).

From these basic facts, Plaintiff-Appellant makes an incredible logical leap—that because the one Fred Meyer employee he contacted at the store level was not personally able to help him, he was therefore foreclosed from *ever* having *any* communication with Fred Meyer regarding his concerns about the information contained in his consumer report.

It is also worth noting that Plaintiff-Appellant clearly recognized that contacting Fred Meyer directly to dispute/explain his consumer report was a viable option. Clearly, if Plaintiff believed that Fred Meyer's § 1681b(b)(3)(A) disclosure barred him from contacting the Company, he would not have made attempts to reach out to Fred Meyer directly. Thus, because Fred Meyer's § 1681b(b)(3)(A) communication did not serve as a bar to direct communication with Fred Meyer and further because Plaintiff-Appellant knew it did not constitute a bar, his claim was properly dismissed by the District Court.

**C.    By Enacting The FCRA, Congress Did Not Intend To Provide Applicants/Employees An Opportunity To Discuss Accurate, Negative Information With Their Employers.**

Because the express provisions of § 1681b(b)(3)(A) do not require that consumer inquiries be directed exclusively to Fred Meyer,  Plaintiff-Appellant begs this Court to find an implicit obligation within the statute that employers must discuss or provide an opportunity for applicants/employees to contextualize accurate, yet negative information contained in their consumer report. However, as the United States Supreme Court and this Court have already determined, Congress did not intend to impose such an obligation throughout the FCRA.

The United States Supreme Court has previously explained the Congressional intent for enacting the FCRA in 1970. In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), the Court described Congress' intent as follows:

> Congress enacted FCRA in 1970 to ensure fair and **accurate credit reporting**, **promote efficiency** in the banking system, and **protect consumer privacy**. (emphasis added). See 84 Stat. 1128, 15 U.S.C. § 1681; *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001). The Act requires, among other things, that "any person [who] takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report" must notify the affected consumer. 15 U.S.C. § 1681m(a). The notice must point out the adverse action, explain how to reach the agency that reported on the consumer's credit, and tell the consumer that he can get a free copy of the report and dispute **its accuracy** with the agency. Ibid.

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52-53 (2007).

36

Per the Supreme Court, Congress enacted the FCRA to ensure: (1) consumer reports were accurate; (2) consumer information was efficiently obtained; and (3) consumer's privacy was protected. Thereafter in 1996, Congress amended the FCRA by means of the Consumer Credit Reporting Reform Act of 1996. *Pub. L.* 104-208. By amendment, Congress added § 1681b(b) to the FCRA, the consumer employment protections through which Plaintiff-Appellant bring his claims.

In *Syed*, this Court expanded the Supreme Court's discussion in *Safeco* by opining on Congress' intent for amending the FCRA to include § 1681b(b)'s employment protections. Interspersed throughout *Syed*, this Court identified and discussed the myriad of issues Congress meant to combat by amending the FCRA and adding employment protections. Specifically, *Syed* described Congress' intent for passage of § 1681b(b) as follows:

> Congress amended the FCRA in 1996. Consumer Credit Reporting Reform Act of 1996, Pub. L. 104-208, § 2403, 110 Stat. 3009-426, 3009-431. It recognized "the significant amount of **inaccurate** information that was being reported by consumer reporting agencies and **the difficulties that consumers faced getting such errors corrected**." S. Rep. No. 108-166 at 5-6 (2003) (describing 1996 amendments)(emphasis added). Congress was specifically concerned that prospective employers were obtaining and using consumer reports in a manner that violated job applicants' **privacy rights**. S. Rep. No. 104-185 at 35 (1995)(emphasis added)…This provision (15 U.S.C. § 1681b(b)(2)(A)) furthers Congress's overarching purposes of ensuring **accurate credit reporting**, promoting **efficient error correction**, and **protecting privacy**. (emphasis added). See *Safeco*, 551 U.S. at 52. Indeed, in addition to securing job applicants' privacy

37

rights by enabling them to withhold authorization to obtain their consumer reports, the provision promotes **error correction** by providing applicants with an opportunity to **warn a prospective employer of errors** in the report before the employer decides against hiring the applicant on the basis of information contained in the report.

*Syed v. M-I, LLC*, 853 F.3d 492, 496-97 (9th Cir. 2017).

Thus, similar to the Supreme Court's holding in *Safeco*, as of March 20, 2017, this Court explained that Congress amended the FCRA to include § 1681b(b) to ensure: (1) consumer reports were accurate; (2) consumer information was efficiently obtained; (3) consumers' privacy was protected; and (4) consumers had an opportunity to identify inaccurate information and provide an avenue to correct it. Notably, as last interpreted by this Court, Congress did not enact or amend the FCRA to provide consumers with an opportunity to discuss or contextualize accurate, yet negative information.

Despite the recent explanation of Congressional intent by this Court, Plaintiff-Appellant attempts to add to the foregoing list of potential harms Congress meant to address by citing a combination of non-binding FTC staff opinions and a handful of judicial opinions that fail to address the substantive law suggested in his appellate brief. (ECF No. 10, at 33-40). For the reasons described in the following sections, Plaintiff-Appellant's reliance on these authorities is inapposite.

38

### i. *The FTC Staff Opinions Cited By Plaintiff-Appellant Lack Precedential Value And Do Not Create Substantive Requirements Under The Law.*

Plaintiff-Appellant relies on several FTC staff opinion letters to advance his § 1681b(b)(3)(A) claim. Specifically, he argues that Fred Meyer had a duty to discuss or otherwise allow him to explain the accurate information contained in his consumer report. Plaintiff-Appellant relies on two separate FTC staff opinions to support his position. *FTC Advisory Opinion to Lewis* (June 11, 1998); *FTC Advisory Opinion to Coffey* (Feb. 11, 1998). However, his reliance on these opinions is misplaced for two reasons: (1) this Court recently declined to lend credence to FTC staff opinions even where they squarely addressed the issue at hand; and (2) FTC staff opinions are of so little precedential value that not even the FTC is bound by them.

With respect to the first issue, Plaintiff relies on *Lewis* and *Coffey* as evidence that his § 1681b(b)(3)(A) rights are not limited to "correcting erroneous information" contained in his consumer report. (ECF No. 10, at 33). Rather, Plaintiff-Appellant argues that *Lewis* and *Coffey* demonstrate that § 1681b(b)(3)(A) "allow[s] consumers to discuss the report with employers [directly] before adverse action is taken." *FTC Advisory Opinion to Lewis* (June 11, 1998); *FTC Advisory Opinion to Coffey* (Feb. 11, 1998).

39

However, setting aside the obvious fact that these staff opinions, even if accepted, do not require Fred Meyer to take any additional affirmative actions to comply with § 1681b(b)(3)(A) (See Section II.A.(above)), reliance on them is further misplaced because this Court has already declined to rely on FTC staff opinions in making FCRA decisions because they are non-binding pronouncements.

In *Syed*, this Court declined to rely on FTC staff opinions when interpreting § 1681b(b)(2)(A) claims even though the Court acknowledged that the opinions were "relevant to the issue at hand." *Syed* at 504 n.6 (9th Cir. 2017). Specifically, the Court noted that FTC advisory opinions lack any authoritative guidance:

> The FTC has released three informal staff opinion letters relevant to the issue at hand, each supporting Syed's interpretation of Section 1681b(b)(2)(A). See FTC, Opinion Letter, 1997 WL 33791227, at *1 (Oct. 21, 1997) ("[The] document should include nothing more than the disclosure and the authorization for obtaining a consumer report."); FTC, Opinion Letter, 1998 WL 34323748, at *2 (Feb. 11, 1998) (disclosure may describe the "nature of the consumer reports" it covers, but otherwise should "not be encumbered with extraneous information"); FTC, Opinion Letter, 1998 WL 34323756, at *1 (June 12, 1998) (inclusion of a waiver in a disclosure form violates Section 1681b(b)(2)(A)). However, informal opinion letters do not constitute authoritative guidance. See *Safeco,* 551 U.S. at 70, n.19. Therefore, we do not rely on them here. (Id.)

40

In light of this Court's prior refusal to assign any precedential value to FTC staff opinions, Plaintiff-Appellant's reliance on them on appeal is unavailing and their precedential value should be summarily discounted.

Beyond *Syed*, textual disclaimers contained in *Lewis* and *Coffey* further illustrate Plaintiff-Appellant's misguided reliance on FTC staff opinions throughout his §1681b(b)(3)(A) argument.[1] Within his argument, Plaintiff-Appellant boldly asserts: "Courts **and the FTC** have long recognized that the purpose of Section 1681b(b)(3)(A) of the FCRA is to afford employees a real opportunity to dispute or discuss negative reports and change their employer's mind before adverse action is taken." (ECF No. 10, at 32) (emphasis added). However, despite that claim, the text of *Lewis* and *Coffey* clearly disavow that the FTC has taken any official position on this matter.

Specifically, *Lewis* closes its opinion with the following disclaimer: "The views that are expressed above are those of the Commission's staff and are not the views of the Commission or any particular Commissioner." *FTC Advisory Opinion to Lewis* (June 11, 1998). Similarly, *Coffey* closes as follows: "The opinions set

---

[1] Herein, Fred Meyer specifically addresses the precedential value of FTC staff opinions with respect to *Lewis* and *Coffey*. However, the Company believes the arguments contained in this Section apply equally to all FTC Advisory Opinions cited in Plaintiff-Appellant's appellate brief.

41

forth in this informal staff letter are not binding on the Commission." *FTC Advisory Opinion to Coffey* (Feb. 11, 1998). These disclaimers, combined with the Court's precedent in *Syed*, render Plaintiff-Appellant's reliance on *Lewis* and *Coffey* meaningless. Accordingly, this Court should ignore their content as the opinions lack any precedential value and do not constitute binding authority.

> ## ii. *Judicial Opinions Relied Upon By Plaintiff-Appellant Are Non-Binding And Do Not Prohibit Fred Meyer's Referral Of Consumers To GIS.*

Plaintiff-Appellant also relies on four (4) district court cases to support his position that Fred Meyer violated §1681b(b)(3)(A) by directing Plaintiff-Appellant to "dispute the accuracy or completeness" of information in his consumer report with GIS. However, as the following paragraphs demonstrate, the cases cited by Plaintiff-Appellant have little to no precedential value as they are not binding on this Court and these decisions actually undercut Plaintiff-Appellant's argument.

Plaintiff-Appellant relies heavily on *Magallon v. Robert Half Int'l, Inc*., 311 F.R.D. 625, 633 (D. Or. 2015) and *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc*., 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012), to establish that prior to taking an adverse action, Fred Meyer was required to provide him with an opportunity to "contest or explain [his] report" directly with the Company or

provide him with an "opportunity to change [Fred Meyer's] mind." (ECF No. 10, at 47).

However, in citing *Magallon* and *Goode*, Plaintiff-Appellant fails to recognize that those two (2) cases actually weaken his claim. In fact, *Magallon* (citing *Goode* for the same proposition) maintains that direct discussions with a potential employer are not the exclusive avenue by which an employer may review/consider an applicant's consumer report: "the 'clear purpose' of the pre-adverse action notice requirement is 'to afford employees time to discuss reports with employers, **or otherwise respond** before action is taken.'" (Emphasis added.) *Magallon* at 634.[2]

Rather than hold that direct discussions are the exclusive method by which an employer such as Fred Meyer must allow a consumer-applicant/employee to "contest or explain" a consumer report, *Magallon* and *Goode* clearly anticipate multiple avenues by which an employer can satisfy § 1681b(b)(3)(A)'s obligations.

---

[2] Similar to the findings in *Syed* relative to Congressional intent, in reaching its conclusion, *Magallon* relies on *Brown v. Lowe's Cos., Inc.*, 52 F. Supp. 3d 749, 757 (W.D. N.C. 2014) ("It may be inferred from the statutory language that Congress intended to ensure that a potential employee would have the opportunity to address any **inaccuracies** contained in the consumer report used against him or her during the hiring process.")(emphasis added). Thus, *Magallon* also supports Fred Meyer's position that Congress did not intend to regulate employer's use of "accurate" consumer information as opposed to inaccurately reported information.

43

As a result, these two cases do not stand for the proposition that Fred Meyer was prohibited from referring Plaintiff-Appellant to GIS, an avenue through which he could "otherwise respond" before Fred Meyer decided whether or not to take an adverse employment action.

Alternatively, Plaintiff-Appellant relies on *Mix v. Asurion Ins. Servs.*, 2016 U.S. Dist. LEXIS 172874, at 5 (D. Ariz. Dec. 14, 2016)[3] and *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 629 (E.D. Va. 2016) to establish that Fred Meyer possessed a non-delegable duty to allow Plaintiff-Appellant to dispute the contents of his consumer report or explain the accurate information contained therein. Plaintiff-Appellant only provides the Court with legal "sound bites" allegedly supporting an implicit right to directly dispute or explain. However, a closer inspection of *Mix* and *Thomas* reveals that these two (2) opinions are unpersuasive because they are completely unrelated to the issue before the Court.

In *Mix*, the Court was asked to address whether the plaintiff's employer and its consumer reporting agency violated § 1681b(b)(3)(A) by failing to provide her with a copy of her consumer report or a description of her rights at any time prior to taking an adverse action. *Mix* at 9-11. Clearly, that is not the issue on appeal in

---

[3] Plaintiff-Appellant refers the Court to page 5 of the opinion, but the quote referred to in his brief is contained on pages 16-17.

this matter.[4]  Similarly, in *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623 (E.D. Va. 2016), the Court dealt with a situation where the plaintiff was adjudged ineligible for employment based on the results of a background check without *ever* having received either a copy of his background check or a summary of rights. *See Thomas*, 193 F. Supp. 3d at 628.

Ultimately, the *Thomas* court found that under the circumstances presented in that case, the plaintiff possessed Article III standing because he had alleged a cognizable injury and therefore was able to survive a motion for summary judgment.  However, relevant to this appeal, the court in *Thomas* did *not* hold that an employer violated the FCRA by directing applicants for employment to its agent to dispute or explain information contained in a consumer report.[5]

In addition to the four (4) cases discussed above, Plaintiff-Appellant's appellate brief is also rife with legal citations from cases generally describing the right of a consumer-applicant/employee to contest information contained in a

---

[4] It is undisputed that Fred Meyer, through its agent GIS, sent Plaintiff-Appellant a copy of his background check report and the summary of rights consistent with § 1681b(b)(3)(A)."  (ER 30-31).

[5] Besides the fact that *Thomas* does not stand for the proposition for which Plaintiff cites it on appeal, it is also worth noting that *Thomas* has been distinguished eight (8) of the nine (9) times it has been cited by courts in this Circuit.  *Mix* represents the sole occasion *Thomas* has been followed by a court in this Circuit. That fact further calls into question the validity of *Thomas* in this Circuit.

45

consumer report. However, Plaintiff-Appellant cites no case, and Fred Meyer is unaware of any, where a court has established the legal precedent Plaintiff-Appellant now asks the Court to create, namely that directing a consumer-applicant's dispute or explanation of information contained in a consumer report to a third party agent is *per se* a violation of § 1681b(b)(3)(A).

As Magistrate Judge You appropriately found in her Findings and Recommendations, "[The FCRA] leaves no doubt that Walker has a right to try and forestall adverse action by providing additional information or explanation. However, there is no prohibition in the statute or the case law that an employer cannot use an agent to facilitate that process." (ER 25).

No court in the country has held otherwise because to do so would far exceed the requirements of the FCRA and the Congressional intent described above. Furthermore, the precedent requested by the Plaintiff-Appellant would necessarily upend the entire nationwide consumer reporting agency industry, as employers such as Fred Meyer regularly hire third party CRAs to obtain consumer reports, process disputes, assess the completeness of reports, and finally provide the Company information upon which it can independently render decisions regarding adverse employment actions.

46

In fact, curtailing employers' ability to utilize CRAs in the administration of the pre-adverse action dispute process would actually undercut the purpose of the FCRA, *i.e.* the efficient identification and correction of inaccurately reported information. Certainly, between employers such as Fred Meyer and CRAs such as GIS, the CRA is in the best position to reexamine and amend information in a report generated by the CRA. For this reason, limiting the agency relationship in this context is illogical and unwarranted.

Thus, because the cases cited by Plaintiff-Appellant as supporting his § 1681b(b)(3)(A) claim are unpersuasive and/or do not stand for the propositions for which they are cited, the dismissal of his § 1681b(b)(3)(A) claim should be upheld.

> **D. Even If The Court Determines Fred Meyer Was Required To Discuss Accurate Information Contained In His Consumer Report, Plaintiff-Appellant's Claim Was Properly Dismissed Because He Did Not Attempt To Engage Fred Meyer Until After The Adverse Employment Decision Had Been Made.**

Even if the Court determines Fred Meyer had a duty to (i) allow him to dispute information contained in his consumer report directly with the Company or (ii) discuss/contextualize accurate yet negative information contained in Plaintiff-Appellant's consumer report, his § 1681b(b)(3)(A) claim was properly dismissed because his complaint fails to state a cognizable legal claim upon which relief can

47

be granted.  Even accepting "all factual allegations in the complaint as true and constru[ing] the pleadings in the light most favorable to the [Plaintiff-Appellant]," Plaintiff-Appellant failed to state a cognizable claim for violations of § 1681b(b)(3)(A).  *See Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017)(citing *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)(describing proper legal standard for reviewing 12(b)(6) dismissals on appeal)).

Construing the factual allegations in his Complaint in the light most favorable to Plaintiff-Appellant, it is obvious that he failed to make any effort to either dispute allegedly inaccurate information with Fred Meyer or discuss/contextualize accurate yet negative information with the Company prior to his receipt of the adverse action notice on or after April 10, 2017.  (ER 39). Specifically, Plaintiff-Appellant's Complaint details the temporal progression of the Fred Meyer adverse action process.  Accepting the facts in the Complaint as true, the chronology of pre-adverse action related events is as follows:

- On or about April 3, 2017, Plaintiff Appellant received a pre-adverse action notice and copy of his consumer report; (ER 38-39);

- On or around April 10, 2017, Plaintiff received the final adverse action notice informing him that based on the content of his consumer report, Fred Meyer had elected not to extend an offer of employment; (ER 39); (ER 33); and

48

- "**Following Plaintiff's receipt of the adverse action notice,**" Plaintiff contacted a human resources representative for Fred Meyer (ER 39)(emphasis added).

Based on the facts above, it is obvious that Plaintiff-Appellant failed to take sufficient action to either dispute or discuss his consumer report with Fred Meyer until after he had already been informed that his conditional offer of employment had been revoked seven calendar days (five business days) earlier.[6] *See Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 634 (D. Or. 2015)("the applicant must have enough time between the notice and the final decision to meaningfully contest or explain the contents of the report."). Thus, Plaintiff-Appellant's Complaint fails to state a claim upon which relief may be granted because he failed to dispute or explain the content of his consumer report prior to receiving the final adverse employment action notice revoking his conditional offer of employment.

Even assuming there is an obligation under the FCRA for Plaintiff-Appellant to contact Fred Meyer directly to dispute his consumer report, his claim still fails. It is undisputed that Plaintiff-Appellant did, in fact, contact Fred Meyer regarding his consumer report, albeit after receiving his pre-adverse and adverse action

---

[6] To the extent they carry any precedential value, FTC opinions have noted that waiting five (5) business days to inform an applicant of its adverse employment decision as Fred Meyer did in this case satisfies an employer's requirement to wait a "reasonable" amount of time, but also finding that the facts of any particular employment situation may require a different amount of time.

notices. (ER 38-39). The bottom line is that Plaintiff-Appellant simply disagrees with Fred Meyer's decision not to hire him. While it is understandable for Plaintiff-Appellant to be dissatisfied with Fred Meyer's decision, his dissatisfaction with the Company's decision does not warrant a FCRA claim against the Company.

## CONCLUSION

Fred Meyer's actions with regard to Plaintiff-Appellant's application for employment were at all times fully compliant with the FCRA. In accordance with 15 U.S.C. § 1681b(b)(2)(A)(i), Plaintiff-Appellant was given a concise, clear, stand-alone document disclosing that Fred Meyer would be acquiring a consumer report through a third party consumer reporting agency as part of the application process.

When that consumer report contained negative information, Fred Meyer sent through its agent a 15 U.S.C. § 1681b(b)(3)(A)–compliant notice of adverse action informing Plaintiff-Appellant of his rights under the FCRA and instructing him on how to respond if he wished. Plaintiff-Appellant did not respond within the time frame allotted by the adverse action notice, and Fred Meyer acted within its rights in not continuing Plaintiff-Appellant's employment. (ER 33). The District Court

properly recognized that Fred Meyer acted according to the rules set forth by the FCRA at all times. Accordingly, the District Court's order dismissing Plaintiff's complaint in its entirety should be affirmed.

Respectfully submitted,

Dated: January 28, 2019

s/Faith C. Whittaker
Faith C. Whittaker
Ohio State Bar No. 0082486
faith.whittaker@dinsmore.com
Michael B. Mattingly
Ohio State Bar No. 0089847
michael.mattingly@dinsmore.com
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
T: (513) 977-8200 / F: (513) 977-8141

Michael Porter
Oregon State Bar No. 003560
mike.porter@millernash.com
Taylor D. Richman
Oregon State Bar No. 154086
taylor.richman@millernash.com
MILLER NASH GRAHAM & DUNN LLP
111 S.W. Fifth Avenue, Suite 3400
Portland, Oregon 97204
T: (503) 224-5858 / F: (503) 224-0155

*Attorneys for Defendant-Appellee*
*Fred Meyer, Inc.*

## STATEMENT OF RELATED CASES

The undersigned attorney or self-represented party states the following:

[**X**]   I am unaware of any related cases currently pending in this court.

[ ]   I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ]   I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Dated:  January 28, 2019        s/Faith C. Whittaker
                                Faith C. Whittaker
                                Ohio State Bar No. 0082486

                                *Attorneys for Defendant-Appellee*
                                *Fred Meyer, Inc.*

52

## FORM 8.  CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number(s)**  18-35592

I am the attorney or self-represented party.

**This brief contains 10,710 words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with

Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**]    complies with the word limit of Cir. R. 32-1.

[ ]    is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ]    is an **amicus** brief and complies with the word limit of
Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ]    is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ]    complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one)*:

[ ] it is a joint brief submitted by separately represented parties;
[ ] a party or parties are filing a single brief in response to multiple briefs; or
[ ] a party or parties are filing a single brief in response to a longer joint
brief.

[ ]    complies with the length limit designated by court order dated
_____.

[ ]    is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** s/Faith C. Whittaker          **Date:** January 28, 2019

53