# No. 18-35592

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL WALKER,

*Plaintiff-Appellant*,

v.

FRED MEYER, INC.,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Oregon, Portland Division,
No. 3:17-cv-01791-YY
Hon. Michael H. Simon

## DEFENDANT-APPELLEE'S SURREPLY BRIEF

Michael Porter
Oregon State Bar No. 003560
mike.porter@millernash.com
Taylor D. Richman
Oregon State Bar No. 154086
taylor.richman@millernash.com
MILLER NASH GRAHAM
& DUNN LLP
111 S.W. Fifth Avenue, Suite 3400
Portland, Oregon 97204
Telephone: (503) 224-5858

Faith C. Whittaker
Ohio State Bar No. 0082486
faith.whittaker@dinsmore.com
Michael B. Mattingly
Ohio State Bar No. 0089847
michael.mattingly@dinsmore.com
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8397

*Attorneys for Defendant-Appellee Fred Meyer, Inc.*

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

    I.    GILBERG IS DISTINGUISHABLE FROM THE INSTANT CASE BECAUSE FRED MEYER'S DISCLOSURE FORM DOES NOT CONTAIN SURPLUS INFORMATION. .......................2

    II.    FRED MEYER'S DISCLOSURE SATISFIES GILBERG'S STANDALONE REQUIREMENT ......................................................4

    III.    GILBERG UNDERCUTS THE ARGUMENT THAT FRED MEYER'S AUTHORIZATION HAS ANY IMPACT ON THE LEGALITY OF ITS DISCLOSURE ...................................................11

CONCLUSION .....................................................................................................12

CERTIFICATE OF COMPLIANCE .....................................................................14

i

## TABLE OF AUTHORITIES

Page

**Cases**

*Dawson v. Wonderful Pistacios & Almonds, LLC*,
  2018 U.S. Dist. Lexis 71339 (C.D. Cal. Apr. 27, 2018) ......................................6

*Gilberg v. California Check Cashing Stores, LLC, et al.*,
  913 F.3d 1169 (9th Cir. 2019) ................................................................*passim*

*Noori v. Vivint*,
  726 F. App'x 624 (9th Cir. 2018) ....................................................................6, 7

*Syed v. M-I, LLC*,
  853 F.3d 492 (9th Cir. 2017) ...................................................................*passim*

*U.S. v. Gallegos*,
  613 F.3d 1211 (9th Cir. 2010) ............................................................................7

*Walker v. Fred Meyer, Inc.*,
  2018 U.S. Dist. LEXIS 92976 (D. Or. May 7, 2018) .........................................7

**Statutes**

15 U.S.C. § 1681a ...................................................................................................6

15 U.S.C. § 1681b(b)(2)(A) ........................................................................1, 5, 8, 11

15 U.S.C. §1681b(b)(2)(A)(i) ..................................................................................5

15 U.S.C. § 1681b(b)(2)(A)(ii) ...........................................................................5, 10

Fair Credit Reporting Act ("FCRA") ...............................................................*passim*

# INTRODUCTION

Defendant-Appellee Fred Meyer Inc. ("Fred Meyer") filed its answering brief in this matter on January 28, 2019 (Dkt. No. 19). The next day, on January 29th, a three- judge panel of this Court issued a ruling in an unrelated case, *Gilberg v. California Check Cashing Stores, LLC*, *et al.*, 913 F.3d 1169 (9th Cir. 2019). There, the panel ruled that a corporation's Fair Credit Reporting Act ("FCRA") disclosure violated the Act because it included additional disclosures required by various state laws and some limited language it deemed confusing. Per *Gilberg*, the inclusion of the state law disclosures violates 15 U.S.C. § 1681b(b)(2)(A)(i)'s requirement that an FCRA disclosure be presented in a standalone document consisting solely of the disclosure. *Gilberg*, at *4. Moreover, the confusing language rendered the disclosure unclear. *Gilberg*, at *17-18.

Plaintiff-Appellant filed his reply brief on February 18, 2019 (Dkt. No. 24), relying heavily on *Gilberg* to support his 15 U.S.C. § 1681b(b)(2)(A) claim against Fred Meyer. Because *Gilberg* had not been decided when Fred Meyer filed its answering brief, Fred Meyer submits this surreply brief to address the impact of *Gilberg* on the instant case.[1]

---

[1] Defendants-appellees in *Gilberg* have filed a petition for *en-banc* review and accordingly, the decision in *Gilberg* may not be final. However, for purposes of this surreply, Fred Meyer addresses the opinion in *Gilberg* that was issued on January 29. Fred Meyer requests the panel take judicial notice of its *amicus* brief filed in Appeal No. 17-16263.

# ARGUMENT

**I.    *GILBERG* IS DISTINGUISHABLE FROM THE INSTANT CASE BECAUSE FRED MEYER'S DISCLOSURE FORM DOES NOT CONTAIN SURPLUS INFORMATION.**

Plaintiff-Appellant argues that *Gilberg* holds that no information may be contained in an FCRA disclosure besides the disclosure itself and a statutory authorization. Plaintiff-Appellant further argues that Fred Meyer's disclosure form violates that requirement. (Dkt. No. 24 at 8–20). Not so. A closer review of the actual holding in *Gilberg* establishes that the panel only determined that two specific portions of the disclosure violated the FCRA. Because it is uncontroverted that none of the language the *Gilberg* panel found problematic is present in Fred Meyer's disclosure, *Gilberg* is of limited precedential value and is distinguishable based on its facts.

Comparing Fred Meyer's disclosure to the one present in *Gilberg* establishes the significant factual differences between the disclosures in the two cases. First, the *Gilberg* form is lengthier and more cumbersome. Moreover, the *Gilberg* form contains two categories of information that are not present in Fred Meyer's disclosure: (i) state law disclosures; and (ii) a lengthy authorization/acknowledgement.

First, and most significantly, the *Gilberg* form contained multiple paragraphs including lengthy state law disclosures, consisting of: a paragraph addressing

2

"New York and Maine applicants or employees only"; a paragraph addressing "New York applicants only"; a paragraph addressing "Oregon applicants or employees only"; a paragraph addressing "Washington State applicants or employees only"; a paragraph addressing "California applicants or employees only"; and a paragraph addressing "Minnesota and Oklahoma applicants or employees only." *Gilberg*, at *6–9. Fred Meyer's form does not contain any of the foregoing notices in its disclosure.

Secondly, the *Gilberg* disclosure contained a robust authorization/acknowledgement section whereas the Fred Meyer's disclosure does not. In *Gilberg* the recipient was required to acknowledge that he received two separate documents apart from the disclosure—a "notice regarding background investigation" and a "summary of your rights under the fair credit reporting act." (*Id.* at 7). Further, the authorization also required the recipient to authorize the collection of consumer reports. *Id.* at *8.

The *Gilberg* opinion specifically identified these two pieces of information as the impermissible "surplus language" that fan afoul of a legally compliant disclosure:

> CheckSmart, moreover, fails to explain how the surplus language in its disclosure form comports with FCRA's purpose. Its disclosure refers not only to rights under FCRA and under ICRAA applicable to Gilberg, **but also to rights under state laws inapplicable to Gilberg and to extraneous documents that are not part of the FCRA-mandated disclosure – e.g., a "Notice Regarding Background**

3

**Investigation" and a "Summary of Your Rights Under the Fair Credit Reporting Act.**" Because the presence of this extraneous information is as likely to confuse as it is to inform, it does not further FCRA's purpose.

*Id.* at *14 (emphasis added).

Notably however, Fred Meyer's disclosure has <u>none</u> of the "surplus language" found problematic in *Gilberg*. Ultimately, the holding of *Gilberg* is narrow, as explained by the opinion itself: "[W]e now hold that a prospective employer violates FCRA's standalone document requirement by including extraneous information relating to various state disclosure requirements in that disclosure. We also hold that the disclosure at issue here is conspicuous but not clear." *Id.* at *4. Because *Gilberg's* holding was both limited and does not address any language contained in Fred Meyer's disclosure, its holding does not dictate the result in this case.

**II. FRED MEYER'S DISCLOSURE SATISFIES *GILBERG'S* STANDALONE REQUIREMENT**

Fred Meyer previously acknowledged in its answering brief, that the FCRA prohibits an employer from obtaining a consumer report unless a "clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes[.]" 15 U.S.C. §1681b(b)(2)(A)(i). Plaintiff-Appellant's reply brief argues

4

that *Gilberg* and this Court's previous opinion in *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) collectively prohibit the inclusion of *any* information in the disclosure other than the disclosure or the authorization explicitly permitted by 15 U.S.C. § 1681b(b)(2)(A)(ii)).

However, *Gilberg* did nothing to change or modify the standalone requirement described in *Syed*. Despite Plaintiff-Appellant's implication that *Gilberg* modifies the analysis, as argued in its answering brief, Fred Meyer's disclosure is permissible under *Syed*. Accordingly, Fred Meyer's disclosure remains permissible following *Gilberg* because all the information contained therein serves as a "disclosure" to the consumer.

*Gilberg* opines that the statutory text of 15 U.S.C. § 1681b(b)(2)(A) "forecloses implicit exceptions" to the disclosure, placing significant emphasis on the FCRA's requirement that the disclosure be in a document consisting "solely" of the disclosure. However, *Gilberg* like its predecessor *Syed*, does little to answer the question of what constitutes a legally acceptable "disclosure" in the context of the FCRA, beyond further molding the contours of permissible "disclosures" by specifically determining what information does, or does not, properly fall within the scope of a "disclosure" as a matter of law. *See Gilberg*, at *15. Similarly, the FCRA fails to define the scope of a permissible "disclosure."

5

*See* 15 U.S.C. § 1681a (definitions section of the FCRA lacking definition of "disclosure").

The scope of the word "disclosure" as it pertains to the FCRA cannot be discerned simply by reading the dictionary, as the dictionary definition of "disclosure" evades a consistent explanation or ordinary meaning. Black's Law Dictionary defines "disclosure" as, "a revelation or the uncovering a thing that is kept hidden." (https://thelawdictionary.org/disclosure/ last visited March 8, 2019). The Oxford Dictionary defines "disclosure" as, "[a] fact, especially a secret, that is made known." (https://en.oxforddictionaries.com/definition/disclosure last visited March 8, 2019). Finally, the Merriam-Webster Dictionary defines disclosure as: "something disclosed: revelation." (https://www.merriam-webster.com/dictionary last visited March 5, 2019).

These definitions are susceptible to either incredibly broad or narrow interpretations. Certainly, these definitions do not help explain what specific information is permissive in a compliant FCRA "disclosure." The ambiguity is evident in light of the myriad of post-*Syed* cases that have reached different conclusions as to what information comprises a legally valid "disclosure." *See e.g. Noori v. Vivint*, 726 F. App'x 624, 625 n.3 (9th Cir. 2018) (Plaintiff did not appeal district court dismissal of disclosure claim where court held disclosure adequately fulfilled statute's purpose); *Dawson v. Wonderful Pistacios & Almonds, LLC*,

6

2018 U.S. Dist. Lexis 71339, at 14-16 (C.D. Cal. Apr. 27, 2018) (endorsing *Noori* while finding provisions disclosing an applicant's right to inspect consumer reports were compatible with a § 1681b(b)(2)(A)(i)–compliant disclosure); *Walker v. Fred Meyer, Inc.*, 2018 U.S. Dist. LEXIS 92976 (D. Or. May 7, 2018) (all information contained in the disclosure advances the congressional purpose of the FCRA).

The panel opinions in *Gilberg* and *Syed* agree that "[w]here congressional intent has been expressed in reasonably plain terms, the language must ordinarily be regarded as conclusive." *Gilberg,* at *12; *Syed,* 853 F.3d at 500. On the other hand, when a key statutory term such as "disclosure" is ambiguous, the Court must "use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *U.S. v. Gallegos*, 613 F.3d 1211, 1214 (9th Cir. 2010) (relying on these factors where the undefined term "or" was ambiguous). Here, because there is no immediate and obvious definition of what constitutes a "disclosure," a reviewing court must look to congressional intent to determine whether that term has a relatively broad or narrow scope.

This court in *Syed* gave a general overview of the congressional intent underlying the enactment of § 1681b(b):

> Congress amended the FCRA in 1996. Consumer Credit Reporting Reform Act of 1996, Pub. L. 104-208, § 2403, 110 Stat. 3009-426, 3009-431. It recognized "the significant amount of inaccurate information that was being reported by consumer reporting agencies and the difficulties that consumers faced getting such errors corrected." S. Rep. No. 108-166 at 5-6 (2003) (describing 1996

7

> amendments)(emphasis added). Congress was specifically concerned that prospective employers were obtaining and using consumer reports in a manner that violated job applicants' privacy rights. S. Rep. No. 104-185 at 35 (1995)(emphasis added)…This provision (15 U.S.C. § 1681b(b)(2)(A)) furthers Congress's overarching purposes of ensuring accurate credit reporting, promoting efficient error correction, and protecting privacy. (emphasis added). See *Safeco*, 551 U.S. at 52. Indeed, in addition to securing job applicants' privacy rights by enabling them to withhold authorization to obtain their consumer reports, the provision promotes error correction by providing applicants with an opportunity to warn a prospective employer of errors in the report before the employer decides against hiring the applicant on the basis of information contained in the report.

*Syed v. M-I, LLC*, 853 F.3d 492, 496–97 (9th Cir. 2017).

*Gilberg* did not endeavor to modify the Court's understanding of the Congressional intent underpinning the FCRA. Thus, examining the language of Fred Meyer's disclosure form in light of the congressional intent outlined above necessitates the conclusion that post-*Gilberg*, all the language in Fred Meyer's disclosure form continues to serve exclusively as a "disclosure" thereby furthering the purpose of the Act. The language of the disclosure, in its entirety, is as follows:

> We ([t]he Kroger family of companies) will obtain one or more consumer reports or investigative consumer reports (or both) about you for employment purposes. These purposes may include hiring, contract, assignment, promotion, reassignment, and termination. The reports will include information about your character, general reputation, personal characteristics, and mode of living.

> We will obtain these reports through a consumer reporting agency. The consumer reporting agency is General Information Services, Inc. GIS's address is P.O. Box 353, Chapin, SC 29036. GIS's telephone number is (866) 265-4917. GIS's website is at www.geninfo.com.
>
> To prepare the reports, GIS may investigate your education, work history, professional licenses and credentials, references, address history, social security number validity, right to work, criminal record, lawsuits, driving record and any other information with public or private information sources.
>
> You may inspect GIS's files about you (in person, by mail, or by phone) by providing identification to GIS. If you do, GIS will provide you help to understand the files, including communication with trained personnel and an explanation of any codes. Another person may accompany you by providing identification.
>
> If GIS obtains any information by interview, you have the right to obtain a complete and accurate disclosure of the scope and nature of the investigation performed.

(ER 7).

All of the above language furthers the purpose of the FCRA in a clear and conspicuous manner. The entire disclosure is in clear, legible font on a single page. The first paragraph explains the contours of a consumer report. Although Plaintiff-Appellant may argue otherwise, a consumer's interests in being able to decide whether to authorize a putative employer to obtain his or her "consumer report" is obviously furthered by a general understanding of what constitutes a "consumer report." Use of the term "consumer report" without any explanation does little to further that end. The second and third paragraphs explain in very simple terms what it means to "obtain" a consumer report. The fourth and fifth

9

paragraphs explain that the consumer has a right to access the information Fred Meyer relies upon in making its employment decision.

Plaintiff argues that *Gilberg* and *Syed* should be read as forbidding any of the substantive information contained in the disclosure that actually aids a consumer in understanding the FCRA process. The position advanced by Plaintiff-Appellant can lead only to one logical conclusion: a uniform, one sentence disclosure on an otherwise blank piece of paper used by every employer in the country reading as follows: "A consumer report may be obtained for employment purposes."

The only deviation from this single sentence disclosure would depend on whether the employer opted to include a signature line for an authorization based on the express language contained in 15 U.S.C. § 1681b(b)(2)(A)(ii). This "perfect form" envisioned by Plaintiff-Appellant and allegedly supported by *Gilberg* would completely undermine the purposes of the FCRA. In fact, it would be significantly less helpful to the consumer than the disclosure provided in this case.

Even if this Court adopts the position advanced in *Gilberg* that an FCRA disclosure must consist "solely" of a disclosure, the language contained in Fred Meyer's form satisfies this standard. The disclosure document broadly explains what a consumer report is and further explains what precisely it means to "obtain" such a report.

10

In ruling that Fred Meyer's form consists "solely" of a "disclosure" pursuant to the FCRA, the Court would issue an opinion consistent with its holdings in *Gilberg* and *Syed*, while at the same time further defining the permissible scope of FCRA disclosures. Upholding the District Court in this matter will enhance the congressional objective of enabling consumers to control how their consumer reports are obtained and used by potential employers. Accordingly, the District Court's ruling should be affirmed.

**III.** ***GILBERG* UNDERCUTS THE ARGUMENT THAT FRED MEYER'S AUTHORIZATION HAS ANY IMPACT ON THE LEGALITY OF ITS DISCLOSURE**

In his reply, Plaintiff-Appellant again argues that "though the documents are technically separate, Fred Meyer's authorization is presented simultaneously with the disclosure and deprives consumers of the ability to meaningfully authorize their reports." (Dkt. No. 24, at 21). Fred Meyer's answering previously outlined why there is no legal basis for reading its authorization as part of its disclosure for purposes of determining 15 U.S.C. § 1681b(b)(2)(A) compliance. (Dkt. No. 19, at 30–32).

The panel opinion in *Gilberg* further supports Fred Meyer's position on this issue. The panel soundly rejected the Plaintiff-Appellant's contention in *Gilberg* that the other three pages she was required to fill out in her application packet should be read as part of an FCRA disclosure, stating: "Gilberg does not offer any

11

judicial authority, legislative history or dictionary definition to support her argument that the word 'document,' as used in FCRA, encompasses the universe of employment application materials furnished by an employer to a prospective employee." *Gilberg*, at *11–12. The opinion further adds that "under Gilberg's proposed interpretation, it is difficult to see how an employer could ever provide an applicant written application materials without violating FCRA's standalone document requirement." *Id.* at *12.

Accordingly, for the reasons outlined in Fred Meyer's answering brief and as reinforced by *Gilberg*, Plaintiff-Appellant's argument that Fred Meyer's separate authorization form should be read to affect the legality of its disclosure form is completely without merit.

## CONCLUSION

*Gilberg* decided a question of law based on language contained in an FCRA disclosure form. None of the language at issue in that case is present in Fred Meyer's disclosure form in the instant case. Accordingly, *Gilberg* has no direct bearing on this case. Even if the Court finds *Gilberg* applicable, Fred Meyer's disclosure is "solely" comprised of the statutorily permissible "disclosure." Finally, *Gilberg* undercuts Plaintiff-Appellant's arguments that Fred Meyer's authorization form has any impact on the analysis of its FCRA

disclosure. For these reasons, the District Court's order dismissing Plaintiff-Appellant's complaint in its entirety should be affirmed.

Respectfully submitted,

Dated: March 22, 2019

s/Faith C. Whittaker
Faith C. Whittaker
Ohio State Bar No. 0082486
faith.whittaker@dinsmore.com
Michael B. Mattingly
Ohio State Bar No. 0089847
michael.mattingly@dinsmore.com
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
T: (513) 977-8200 / F: (513) 977-8141

Michael Porter
Oregon State Bar No. 003560
mike.porter@millernash.com
Taylor D. Richman
Oregon State Bar No. 154086
taylor.richman@millernash.com
MILLER NASH GRAHAM & DUNN LLP
111 S.W. Fifth Avenue, Suite 3400
Portland, Oregon 97204
T: (503) 224-5858 / F: (503) 224-0155

*Attorneys for Defendant-Appellee Fred Meyer, Inc.*

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number(s)** 18-35592

I am the attorney or self-represented party.

**This brief contains 2,717 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties;
[ ] a party or parties are filing a single brief in response to multiple briefs; or
[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** s/Faith C. Whittaker      **Date:** March 22, 2019